Marshall, C. J.
 

 The judgment in the court of common pleas and the affirmance of the judgment in the Court of Appeals in cause No. 21364 were rendered upon the theory that the failure to execute a bill of sale in favor of Seymour at the time of his purchase, and the consequent failure to file a bill of sale with the clerk of the court within three days thereafter, gave Seymour no title to the automobile, and therefore gave no validity to the chattel mortgage executed by him, and that the Central Ohio Peerless Compay was therefore free to give a bill of sale to Schreyer at a later date.
 

 This case turns entirely upon the legislative intent in the enactment of Sections 6310-3 to 6310-14, inclusive, General Code. Those sections were enacted April 29, 1921, (109 Ohio Laws, 330), and the purpose of the act was, as expressed in its title: “To prevent traffic in stolen cars, require registration and bill of sale to be given in event of sale or change in ownership of motor vehicles.” Section 6310-4 declares it to be “unlawful to sell, convey, give away, transfer, exchange, receive, purchase or obtain any 'motor vehicle’ or 'used motor vehicle’ within this state, except in the manner and subject to the conditions hereinafter provided.” Section
 
 *573
 
 6310-5 declares it to be unlawful to sell or give away a motor vehicle unless the vendor or donor shall at or before such sale or gift execute in the presence of two witnesses a bill of sale in duplicate, delivering both copies to the purchaser. That section also provides in detail what the bill of sale shall contain. Section 6310-9 requires such bill of sale to be verified by the seller before a notary public or other officer before the delivery. It further provides that any bill of sale not verified before delivery “shall be null and void and of no effect in law.” Section 6310-10 provides for filing a bill of sale with the clerk of courts “within three days immediately thereafter.” Section 6310-13 provides: “No person residing in this state shall drive, use or operate, a motor vehicle or ‘used motor vehicle’ upon the public highways thereof, without having a ‘bill of sale’ for the motor vehicle as defined-in this act, or without having first filed, with the clerk of courts, of the county in which his residence is established, a sworn statement containing the name, ’ ’' etc., and having obtained from said clerk a certified copy of such statement. Section 6310-14, as amended in 1923, 110 Ohio Laws, 402, provides severe penalties for violation of the provisions of the act, the minimum penalty being a fine of $25, and the maximum $5,000, or imprisonment for not more than five years, or both.
 

 The problem in these cases is one of interpretation of statute. There is no question of legislative power. It is not doubted that the legislature in the exercise of the police power may impose severe restrictions, not only upon the manner of executing contracts, but also upon the right to enter into cér
 
 *574
 
 tain kinds of contracts at all. The most familiar example of the latter is the prohibitions against gambling contracts, and, of the former, the statute of frauds and perjuries. We are here concerned with a question of legislative intent to be determined by applying well-settled canons of interpretation. There is no language of doubtful meaning to be construed, or contradictory provisions to be reconciled. We need only ascertain the policy and purpose of the act, the occasion and necessity of its enactment, and the mischief to be suppressed. Fortunately the legislature has furnished an aid in stating in the title that it is to prevent crime and to require registration as a means to that end. While the title is no part of the substantive law, it is proper to look to the title to ascertain the legislative purpose and intent, and, if the body of the act contains no language which is in conflict with that expressed purpose, the inquiry is greatly facilitated. The force to be given to a title as a factor in interpretation of a statute in the state of Ohio surpasses that to be given in some of the states, because Section 16, Article II, of our Constitution, requires: “No bill shall contain more than one subject, which shall be clearly expressed in its title.” This rule is declared in
 
 United States
 
 v.
 
 Fisher,
 
 6 U. S. (2 Cranch), 358, at page 386 (2 L. Ed., 304); and again in
 
 United States
 
 v.
 
 Palmer,
 
 16 U. S. (3 Wheat.), 610, at page 631 (4 L. Ed., 471). In
 
 Coosaw Mining Co.
 
 v.
 
 South Carolina, ear rel. Tillman,
 
 144 U. S., 550, at page 563, 12 S. Ct., 689, 692 (36 L. Ed., 537), it is stated: “This rule is especially applicable in states whose constitutions, like that of South Carolina, provide that ‘Every act or
 
 *575
 
 resolution, having the force of law, shall relate to but one subject, and that shall be expressed in the title’ ” — citing
 
 Myer
 
 v.
 
 Western Car Co.,
 
 102 U. S., 1, 11, 12 (26 L. Ed., 59).
 

 The purpose expressed in the title to the act of 1921 is in perfect harmony with the text of the act. The act requires vendors and purchasers of motor vehicles to observe certain prescribed formalities in transferring and registering such vehicles, and imposes severe penalties upon non-observance* Tt i= therefore in every sense a penal statute, and yet it relates to a subject-matter which is highly respectable and a business which employs more capital and labor than almost any other kind of property or business. The statute does not seek to discourage or limit or control the volume or character of the business, but rather to encourage it by affording additional protection from fraud and theft to those who deal in such property. Being a penal statute, it must be strictly construed. That is to say, it should be construed according to its exact and technical meaning, recognizing nothing that is not expressed, and limiting its application to cases clearly described within the words used. A careful study of the act shows that it does not declare any
 
 contract
 
 to be unlawful, but that it shall be unlawful to proceed in any except a prescribed way in executing the contract. The authorities divide such statutes into two classes: First, those which forbid certain contracts to be made, or certain acts to be done; and, second, those which prescribe a certain mode and manner of doing the act, or the procedure to be followed in making the contract. The greater weight of authority holds that, if the act or contract
 
 *576
 
 is not prohibited, and the act is done otherwise than in the manner prescribed, or if the contract is made in form other than that provided, the unlawful manner may be punished, but the transaction itself is held to be legal. This court has rather recently had occasion to deal with this subject in the case of
 
 Warren People’s Market Co.
 
 v.
 
 Corbett & Sons,
 
 114 Ohio St., 126, 151 N. E., 51. That case had under interpretation Section 6373-1
 
 et seq.,
 
 General Code, known as the “Blue Sky Law,” which makes rather exacting requirements as to the mode and manner of issuing securities in this slate. This court held that it was not the purpose of the legislature in imposing express penalties for violation of the law to render void any contract based on the prohibited act. The case of
 
 Tod
 
 v.
 
 Wick Bros. & Co.,
 
 36 Ohio St., 370, discusses the same proposition.
 

 There is another rule of interpretation applicable to these cases. Ordinarily a contract of purchase and sale of a motor vehicle is not different from a contract relating to any other kind of personal property. At common law, a motor vehicle can be bought and sold by parol contract. Any statute, therefore, which limits, or prescribes a different form of contract, or a different procedure, is in derogation, of common right and of the freedom of contract, and for that reason the statute is subject to the rule of strict construction. The former decisions of this court clearly establish this rule.
 
 Wright
 
 v.
 
 Munger,
 
 Wright, 614;
 
 State, ex rel. Whiteman,
 
 v.
 
 Chase, Gov.,
 
 5 Ohio St., 528;
 
 Pittsburg, C. & St. L. Ry. Co.
 
 v.
 
 Hine, Admx.,
 
 25 Ohio St., 629, 634;
 
 Felix
 
 v.
 
 Griffiths,
 
 56 Ohio St., 39, 45 N. E., 1092;
 
 Palace Hotel Co.
 
 v.
 
 Medart,
 
 87 Ohio St., 130,
 
 *577
 
 138, 100 N. E., 317, Ann. Cas., 1913E, 860; Miller,
 
 Exr.,
 
 v.
 
 Kyle,
 
 85 Ohio St., 186, 97 N. E., 372. Subjecting the act of 1921 to this test of interpretation, we have again carefully analyzed the statute to ascertain to what extent, if at all, it limits the right of contract, and again it must be stated that we find no provision even tending to impose a limitation.
 

 Nowhere in the aet do we find any express provision or any language which may fairly be interpreted to mean that a sale or gift otherwise than in compliance with the act shall render the sale void and of no effect. Nowhere in the act do we find an express provision or language capable of being interpreted to prohibit sales or gifts otherwise than in compliance with the statute, or creating any civil liability for such failure. The act is in every sense a penal statute imposing severe penalties, and for the avowed purpose, as expressed in its title, to prevent crime. This court has considered the provisions of this act in three previous decisions.
 

 The first was the case of
 
 Ohio Farmers’ Ins. Co.
 
 v.
 
 Todino,
 
 111 Ohio St., 274, 145 N. E., 25, 38 A. L. R., 1118, in which a strict interpretation was made, and in which it was held that a policy of insurance, containing a provision that the insurer would not be liable if the insured be not the sole and unconditional owner of the automobile, would not be enforceable if the owner had not complied with the provisions of these statutes. In that case a husband had given the automobile to his wife, but did not at the time execute a bill of sale to her. This court held that, by reason of that omission, the wife was not the sole and unconditional owner of the automobile. There was no other defect in her title
 
 *578
 
 to the car. Those statutes were before this court in that case for the first time, and it seemed to this court at that time that the legislative intent could only be made effective by a strict interpretation of the statute. The next consideration given by this court was in the case of
 
 Helwig
 
 v.
 
 Warren State Bank,
 
 115 Ohio St., 182, 152 N. E., 298. In that case a bill of sale had been executed,
 
 not
 
 for the purpose of transferring title, but in the nature of a chattel-mortgage, although no defeasance clause was written into the bill of sale. The bill of sale was filed with the clerk, and the statute fully complied with in every way. Inasmuch as Section 6310-10 provided for the execution of a bill of sale to one “to whom title has in any manner been passed to a motor vehicle,” it was held in that case by a divided court that this was notice to the world that the bank had some rights, and that any subsequent purchaser took title subject thereto. The only question in that case was whether the bill of sale should also have been filed as a chattel mortgage, in order to comply with the laws governing mortgages of personal property. It was therefore held that the bank holding the bill of sale had such title that its claim was required to be paid before the purchaser would have a clear title.
 

 The third case to be considered by this court was
 
 Metropolitan Securities Co.
 
 v.
 
 Warren State Bank,
 
 117 Ohio St., 69, 158 N. E., 81. That case differed from the
 
 Helwig case
 
 only in the fact that the
 
 Helwig case
 
 related to conflicting claims of persons each of whom held a bill of sale. In the
 
 Securities Co. case,
 
 one claimant held bills of sale given as security for loans, but containing no defeasance clause,
 
 *579
 
 properly executed and filed in the office of the clerk of courts,- as required by the act of 1921. The other claimant, also a. creditor, held, chattel mortgages, which disregarded the act of 1921, but were executed in full compliance with the chattel mortgage laws. It was decided that the chattel mortgage laws have, application to mortgages of all goods and chattels, including motor vehicles, and that a bill of sale in-, tended to operate as a mortgage must therefore be filed in the office of the county recorder. In giving priority to the chattel mortgages, this court departed to some extent from the rigor of the two earlier cases. It is quite certain that the conclusions reached in the third case could not have been reached without a departure from the strictness of interpretation applied in-the first two cases.
 

 We have examined the decisions of other states having automobile registration laws and find that the courts of California, Colorado, Iowa, Texas; Minnesota, and Montana have placed a liberal interpretation upon their laws and hold the contracts not to be void, even though an omission to comply with the laws is an unlawful act and therefore punishable. The states of Kansas, Missouri, New. Jersey, and Oregon have held to a more strict interpretation of their statutes. It will be found; however, that the. statute -in Missouri declares the sale to be fraudulent and void unless the statute is complied with. The New Jersey statute is strictly a penal statute, and, while it is held that the instrument is not effective to convey title, it has nevertheless. enough vitality to be the basis of’ an action for specific performance. The Oregon courts hold the sale to be invalid, yet hold that the vendor may
 
 *580
 
 replevin and recover the value of its use, though he could not recover on the note given to evidence the purchase price. The decided weight of authority in the decisions of other states is in favor of interpreting the statutes as penal statutes, but not affecting the title or right of. possession. The state of Colorado, having a statute quite similar, in
 
 Forney
 
 v.
 
 Jones,
 
 76 Colo., 319, 231 P., 158, held that a secondhand car could be conveyed by a valid bill of sale, notwithstanding the bill of sale to the first buyer was not recorded as required by the statute. The same court in
 
 Williams
 
 v.
 
 Stringfield,
 
 76 Colo., 343, 231 P., 658, held that the failure to record an assignment of an automobile did not prevent passing of title, and that, because the statute contained a provision for a penalty, but no provision for avoidance of the contract, sales in violation thereof would not be void. In
 
 Dunlop
 
 v.
 
 Mercer,
 
 156 F., 545, the United States Circuit Court of Appeals of the Eighth Circuit had under consideration a statute of the state of Minnesota relating to conditional sales, and it was held: “The general rule that illegal contracts are void is not of universal application. It is qualified by the exception that where a contract is not evil in itself, and its - invalidity is not denounced as a penalty for its violation by the express terms of the statute, or by rational implication from the language of the statute which it violates, and that statute prescribes other specific penalties, it is not the province of the courts to do so, and they will not thus affix an additional penalty not intended by the law making power. The true rule is that the court should carefully consider in each case -the entire statute which prohibits an
 
 *581
 
 act under a penalty, its object, tbe evil it was enacted to remedy, the effect of holding contracts in violation of it to be void, for the purpose of ascertaining whether or not the legislature intended to make agreements violative of it void, and if from all these considerations it is manifest that the legislature had no such intention, such contracts should be sustained and enforced; otherwise, they should be adjudged void.”
 

 In
 
 Harris
 
 v.
 
 Runnels,
 
 53 U. S. (12 How.), 79, 13 L. Ed., 901, the United States Supreme Court laid down a rule which has never been overruled, but which has been followed in a variety of cases: “Where a statute prohibits an act or annexes a penalty to its commission, it is true that the act is made unlawful, but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it.”
 

 That case involved a Mississippi statute which provided that slaves should not be brought into the state without a previous certificate signed by two freeholders, with a certificate of the clerk of the courts from which they came certifying that the signers were reputable freeholders. Slaves were brought in without such certificate and sold, and it was held that the contract was not void, but that the purchaser could be compelled to pay his note given for the purchase money.
 

 The state of Texas has a statute similar to the Ohio statute, and it was held in
 
 Shipp Buick Co.
 
 v.
 
 Tolbert
 
 (Tex. Civ. App.), 296 S. W., 329, that a note and mortgage given in exchange of automobiles were not void because in violation of criminal statutes regulating sale of secondhand cars by
 
 *582
 
 dealers. The same rule was declared in
 
 Moore
 
 v.
 
 Galey
 
 (Tex. Civ. App.), 286 S. W., 679, and in
 
 Granger
 
 v.
 
 Ponder
 
 (Tex. Civ. App.), 286 S. W., 668.
 

 In
 
 Hennessy
 
 v.
 
 Automobile Owners’ Ins. Assn.,
 
 (Tex. Civ. App.), 282 S.
 
 W.,
 
 791, 46 A. L. R., 521, it was held that a purchaser of.an automobile who held no bill of sale, as required by the statute, and who had also sold it to another without compliance with the statute, would be held to have an insurable interest therein to the extent of the amount due on buyers’ notes, and it was so declared upon the ground that the statute did not provide that such sales are void or that no title would pass, but was enacted to prevent theft of motor vehicles.
 

 In
 
 Security Finance Co.
 
 v.
 
 Hendry,
 
 189 N. C., 549, 127 S. E., 629, the Supreme Court of North Carolina held that failure to comply with the provisions of a statute requiring one carrying on business under an assumed name to file a certificate in the office of the clerk of the superior court does not render contracts by such person void.
 

 The same court in
 
 Carolina Discount Corp.
 
 v.
 
 Landis Motor Co.,
 
 190 N. C., 157, 129 S. E., 414, in construing an automobile act similar to the Ohio act of 1921, held the act to be a police regulation to protect the geneial public from fraud and theft, and that it did not interfere with the chattel mortgage laws of the state. It was further held in that case, that, notwithstanding the stringent provisions of the motor vehicle act, the rule that sale of personal property need not be evidenced by a written instrument in order to be valid was of. such long standing before the enactment of a motor vehicle registration act that the court would not assume that the legis
 
 *583
 
 lature intended to change it in the absence of an express provision to that effect.
 

 -Notwithstanding the former 'decisions ^of this court already referred to, in:the retrospect of the last five years and in the light of the results of the decisions of the lower courts which have followed the decisions of this court, the .majority of this court at this time are constrained to the view that the court’s former decisions have not expressed the -true legislative intent. The automobile has revolutionized twentieth century civilization in many ways. Those influences have progressed so rapidly and have permeated so many fields of endeavor that they have increased the difficulties of legislation and at the same time the difficulties of the interpretation of legislation. ' When the act of 1921 was adopted, the evil of the theft of automobiles was so acute that the legislature doubtless felt justified in resorting to extreme measures to remedy the evil. When the
 
 Todino case
 
 was decided it seemed best to' this court to place a strict interpretation on that statute and' to give the application of the- statute .the widest range. ‘ The situation in matters of insurance did not seem hard to remedy, and it did not seem that any great hardship would :be imposed upon owners of automobiles in requiring them to have a bill of sale properly executed in order to obtain valid insurance. Each case which has come before the court since that time has presented much greater difficulties. ' The courts are now frequently confronted with'the problem of determining the conflicting rights of ownership, and the rights of creditors, and'it has presented situations of a very different character.
 

 
 *584
 
 The decisions of the lower courts in the instant case have held that omissions to faithfully comply with the statute at the time it should have been complied with cannot be cured. If the statute should be so construed at this time as to deny validity to any transfer of title., where the statute has not been faithfully complied with, and if being so construed the statute should be literally and strictly enforced, many curious situations and entanglements would occur. If the bill of sale should not be executed until after the sale, or, being executed, should not be filed within three days immediately thereafter, and if it should be held that time is of the essence of this provision of the statute, then the title would rest nowhere. The seller has received the equivalent and no longer has any just claim. The purchaser has paid full consideration. He has received nothing in return. By the provisions of Section 6310-13 he cannot license or use the car on the highways. If the
 
 Todino case
 
 is to be followed, he cannot insure it against fire or theft. Under such circumstances he would not be required to pay taxes. The car would become a bit of flotsam cast adrift upon the sea of senseless legislation. The purchaser could not convey it back to the dealer, because immediately upon the first sale it becomes a used motor vehicle under the definition of that phrase in Section 6310-3, and Sections 6310-8 and 6310-10 require that he must make delivery of the duplicate bill of sale obtained from the clerk of the court, which of course he would not have.
 

 Having the benefit of the experiences of the past eight years, and having observed this law in operation for that period, and having observed the dif
 
 *585
 
 ficulties which have grown out of the interpretation of that statute by the former decisions of this court, the majority of this court are of the opinion that the
 
 Todino
 
 and
 
 Helwig cases
 
 should be overruled. In so doing we lay down a few propositions all of which apply to these cases.
 

 The act of 1921 had a definite purpose, which is expressed in its title. It is a penal statute which was not intended to affect the validity of contracts, or titles, or rights of property. It was not designed to repeal or interfere with the statutes relating to conditional sales, chattel mortgages, or the uniform law of sales in transactions relating to motor vehicles. Its provisions apply only to the statute relating to the sale of chattel property by making special procedure to govern the transfer of title to motor vehicles. By virtue of its provisions purchasers of motor vehicles may unreservedly rely upon the files in the office of the clerk of courts in ascertaining the title to motor vehicles. But a failure to execute bills of sale concurrently with the making of sales of motor vehicles, or failure to file a bill of sale within three days immediately thereafter, will not
 
 ipso facto
 
 render a transfer void. A sale of a motor vehicle not accompanied by a bill of sale executed in compliance with the act of 1921 is not void, but is effective between the parties. If a bill of sale is executed in proper form, though not executed at the time of making the sale, it is nevertheless a valid instrument when executed. A bill of sale properly executed either at the time of sale or at any time subsequent thereto becomes effective as against subsequent purchasers from the time of filing in the office of the clerk of courts, even though not filed within three days immediately thereafter.
 

 
 *586
 
 From the foregoing principles it follows, in cause No. 21364, that possession of the automobile having been delivered to Seymour, and Seymour having paid part of the purchase price, and having executed and delivered his note and chattel mortgage for the balance, the contract became valid between the parties. The Central Ohio Peerless Company having negotiated the note and the mortgage to the Commercial Credit Company, and no rights of creditors having intervened, the Commercial Credit Company became a valid purchaser of the mortgage, and a record of that mortgage would be constructive notice to all subsequent purchasers and mortgagees. Seymour having received a bill of sale properly- executed on November 1, 1925, and having filed the same in the office of the clerk of courts of Franklin county on May 18, 1926, and the- rights of no other purchasers having intervened, his title became-good as to all persons except the mortgagee. When Schreyer purchased the automobile on June 10,1926, he had constructive notice of the sale made by the Central Ohio Peerless Company to Seymour, by reason of the bill of sale which was filed in the office of the clerk of the courts of Franklin county on May 18, 1926. Having that notice, he was put upon inquiry concerning chattel mortgages given by Seymour, and was therefore bound to examine the files in the office of the county recorder of Franklin county, and must therefore be held to have constructive notice of the chattel mortgage held by the Commercial Credit Company. The issues joined between the Commercial . Credit Company and Schreyer must therefore be resolved in favor of the Commercial Credit Company, and the judgments of
 
 *587
 
 the Court of Appeals and of the common pleas must therefore be reversed.
 

 In cause No. 21530, one additional'question arises.
 

 Section 6310-9 provides: “Any bill of sale not verified before delivery as hereinbefore provided shall be null and void and of no effect in law.” This is the only provision in the Automobile Registration Act which affects the validity ¿óf the transaction. That portion of the statute being very specific, it must be held that the bill of sale, as it existed at the time of the levy of execution, was wholly invalid, and the transaction stood as though no bill of sale had been executed or delivered. Though a defectively executed bill of sale, which by the'terms of the statute is absolutely void, adds nothing to the title of Mrs. Anderson, it does not follow that she had no title. In accordance with the principles herein declared, a bill of sale was not necessary as between the parties, and the court therefore erred in holding that she had neither the right'of possession nor ownership.
 

 At the triál of this cause issue was joined upon the right of Anderson to transfer his automobile to his wife, by reason of his claimed insolvency, and therefore in violátion of rights of creditors. It is evident that both the trial court and Court of Appeals have followed the principles declared in the
 
 Todino case.
 
 That case having been declared to be unsound, the ruling of the-common pleas court on the question of possession and ownership is likewise unsound, and the cause should therefore be remanded to be again tried upon the question-of
 
 bona fides■
 
 in the transfer from Anderson to his wife.
 

 Judgments reversed.
 

 
 *588
 
 Kinkade, Robinson, Matthias and Allen, JJ., concur.
 

 Jones, J., concurs in the judgment.