## DEAL v GARAUX BROS CO et

Ohio Appeals, 5th Dist, Stark Co

Decided March 31, 1930

E. L. Mills, Canton, and Urban A. Wernet, Canton, for appellants.

Lynch, Day, Pontius & Lynch, Canton, Frank N. Sweitzer, Canton, and Kenneth B. Cope, Canton, for appellee.

442

SHERICK, J.

The appellants advance four reasons why the plaintiff is not entitled to the relief asked. It is first contended that the plaintiff's lease is invalid by reason of his knowledge of the prior lease of the airport company, and the case of **Riley v Rochester, 105 Oh St, 258, 136 NE, 919,** is advanced as authority for this view. That case cannot be controlling in this case for the reason previously stated, that it has not been proven that Deal had notice and knowledge of the existence of the lease previously given by the owners to the airport company. The burden of proving that fact was upon the defendants, and having failed in the proof, knowledge cannot be inferred or imputed to Deal over his positive statement to the contrary. This being true, the plaintiff's lease comes within the purview of the protective provision of §8543, GC, and this contention of the defendants must, therefore, fail.

It is next asserted that the erroneous description invalidates the plaintiff's lease, and that this court cannot in this action reform the description. Examination of the lease shows the property to be described as five acres in the Pontius farm in Plain township, Stark County, Ohio, immediately outside of the city limits of Canton, Ohio, Northeast, and that part of the farm immediately north of the orchard thereon. True, the description may not be said to be explicit, but it is sufficiently clear that one could easily locate this property from the description, and it surely would not be a difficult undertaking to produce a five-acre parallelogram immediately north of the orchard by the aid of the firing pits, traps, and clubhouse, the location of which were known to the defendants at the time they secured their lease. We, therefore, hold that the plaintiff's lease is not defective by reason of inaccuracy or meagerness of description, and that the plaintiff, by his lease, leased that part of the farm previously used by the gun club for many years, and that it is not necessary for this court to reform the description or to write a contract for the interested parties.

In this court the appellants make bold proffer of testimony to the effect that the five acres previously used by the gun club made nearly a square tract, running from the orchard in a northwesterly direction. This seems to this court to be rather a confession and avoidance of the existing equities in this case. They practically admit thereby that the plaintiff has a good lease, but that its boundaries are otherwise located. It is not possible, in view of the location of the structures on the five-acre tract, to so find, for the pits and traps long located face north and slightly east. Perhaps it is true that a part of one pit is located outside of the tract claimed by plaintiff, and that two traps are so located that birds would be thrown outside of plaintiff's tract, yet such cannot aid the defendants, for the plaintiff's lease and that of the old gun club both read, "Five acres more or less" and the "lessee in shooting on said 5 acres to have the right to land shot on other lands of lessor, other than said 5 acres."

It is finally claimed that the plaintiff's lease is void for the reason that its purpose is unlawful and forbidden by §12635 GC, which provides: "Whoever runs a horse, or shoots or fires a gun or pistol at a target within the limits of a municipal corporation, shall be fined not less than five dollars nor more than fifty dollars."

Our Supreme Court, in the case of **Commercial Credit Co. v Schreyer, 120 Oh St, 568, 166 NE, 808, 63 A. L. R., 674,** had before it the question as to the illegality of a contract made in violation of the motor vehicle bill of sales act, and in passing on the question therein involved the court, at page 580, considered the case of Dunlop v Mercer, (C. C. A.), 156 F., 545, and approved of the statement of law therein to the effect that: "The true rule is that the court should carefully consider in each case the entire statute which prohibits an act under a penalty, its object, the evil it was enacted to remedy, the effect of holding contracts in violation of it to be void, for the purpose of ascertaining whether or not the legislature intended to make agreements violative of it void, and if from all these considerations it is manifest that the legislature had no such intention, such contracts should be sustained and enforced; otherwise, they should be adjudged void." The court in the Schreyer case found that the statute in question was purely a police regulation, and that a contract made in violation thereof was not illegal and void, from which it may be seen that not all contracts made apparently in violation of a statute are void or illegal.

It is clear that the Legislature in the enactment of §12635 GC, did not intend to make trap shooting illegal, but only prescribed that a gun should not be discharged at a target within the limits of a municipal corporation. There is nothing immoral or against the settled public policy of this state in trap shooting. It is a harmless recreation when done in proper place. But it was the intention of the Legislature as was said in **Black v State, 103 Oh St, 434, 133 NE, 795,** to protect the public in our municipalities

where the discharge of deadly weapons would be particularly dangerous to people in and about the city's streets and alleys or other public or closely built up places. In this case, however, the gun club and airport are located on an acreage, on a "farm" it is termed, but recently brought into the corporate limits of Canton, and of which neither the lessors nor the lessee were advised. The evidence and exhibits clearly show that it is not in a closely built up neighborhood, but is surrounded by much unimproved property.

Many of our intercounty highways are built up far outside of municipal limits, and to shoot a gun in proximity to such would endanger the public. On the other hand, most municipal lines rest in farming lands. To say that one may now legally discharge a gun at a target immediately outside, but not inside, a corporation limit, borders on the absurd. We think the true meaning of the act to be that it is unlawful to discharge a gun in that portion of a municipality that is closely built upon, or otherwise used by the public, where the public might be injured thereby. It was not meant that the shooting of a gun in open spaces at a target should violate all contracts made in contravention thereof.

We recognize that it is the general rule that where the doing of an act is made illegal by statute, and a punishment is prescribed therefor, as where premises are leased for immoral purposes or to do an unlawful act, per example, for a house of prostitution, or for saloon purposes, acts that are against public morals and the settled public policy of the state, contracts of lease for such purposes are illegal and void. This rule is universal as applied between the lessor and the lessee.

On the other hand, it is recognized that if the consideration is legal, and a part only of what is agreed to be done is illegal, and that may be separated from the balance, the contract may have effect and be enforced for everything but the part thereof which is illegal. We see no sensible reason why this rule does not apply to a contract of lease.

The lessee in this instance, thinking that the object of this lease was legal, as it had been in the past, paid the taxes and the yearly rental in advance. For what? For the right to use the "premises for the purposes of said Gun Club, to erect traps, Club House, thereon, and to be used for the purpose of trap shooting." A gun club may have many other useful and lawful purposes than trap shooting. It is not unlawful for Deal to use the clubhouse for gatherings, as the evidence shows it had been used in the past. We hold the view that the illegal part of the contract, if such there be can easily be separated from that which is legal, and such part of the contract of lease is valid and enforceable. It is clear that the lessee does not have to do trap shooting; he may refrain therefrom and otherwise enjoy his leasehold.

The principle of law adopted is not new in this state. In **Widoe v Webb, 20 Oh St, 431, 435, 5 Am. Rep., 664,** it is said: "When however, for a legal consideration, a party undertakes to do one or more acts and some of them are unlawful, the contract is good for so much as is lawful, and void for the residue. Whenever the unlawful part of the contract can be separated from the rest it will be rejected, and the remainder established."

In **Ohio, ex Laskey v Board of Education, 35 Oh St, 519, at page 527,** Widoe v Webb is approved, and this comment is made:

"Care must be taken not to confound this rule with another equally well settled, that where one of two considerations is illegal, and the other legal, the illegality of the one avoids the promise founded on both.

"In the former case there is one lawful and valuable consideration to support two promises, one legal, the other illegal, that are separable. * * * Where, however, the whole consideration is lawful, and the promisor undertakes to do two things, one that is lawful, and the others unlawful, and they are clearly distinguishable, the good consideration will support the lawful promise."

The rule is also recognized in **State v Executor of Buttles, 3 Oh St, 309, at page 320.**

See, also, Short v C., C., C. & St. L. Ry Co., 18 N. P. (N.S.), 537, at page 545, 27 O. D., N. P., 294, affirmed by the Court of Appeals. In the Supreme Court a motion was sustained to dismiss the petition in error.

It is concluded that even if the plaintiff cannot use the premises for trap shooting, he may enjoy the other lawful purposes for which the premises may be used, as recited in the lease.

Further, it appears to this court that in the present instance the lessors and the plaintiff do not seem at odds, and we see no reason why the plaintiff cannot enjoy the premises in any other lawful manner so long as the lessors do not object. It is not for the appellants to regulate what the lessors and the appellee may do or permit to be done; they may only object to that which may be unlawful.

Coming now to consider the matter of contempt, likewise before this court, we find

that the appellants have knowingly, willfully and repeatedly violated the permanent injunction allowed in the Court of Common Pleas in this case by grading upon and driving their trucks over the plaintiff's leasehold, breaking the walks and tearing down the fences erected on the five acres. Their disobedience to the court's order has been flagrantly and contemptuously done, which they now in the main admit.

· It is therefore the finding and order of this court that the appellants be and hereby are permanently enjoined from entering upon, or in any way otherwise interfering with, the plaintiff's leasehold, as claimed by him.

And it being determined that the appellants have violated the order of injunction made in the Court of Common Pleas, the appellants are hereby sentenced to pay a fine of $100 each for the use of the county; and each is further ordered to give a bond of $500, for the use of the county as further security to obey the injunction order entered in this court, and in default thereof it is ordered that they be confined to close custody in the county jail until they comply with said orders, or be otherwise legally discharged. And the managing officers of each of the appellant corporations are hereby charged with the duty of procuring compliance to the orders herein made.

Injunction allowed.

LEMERT, PJ, concurs.
HOUCK, J, not participating.