OPINION
{¶ 1} Defendant-appellant J J Car Wash, Inc. appeals the decision of the Columbiana County Common Pleas Court, which granted a permanent injunction to plaintiff-appellee City of Columbiana. The issues are whether a city ordinance prevents appellant from constructing a well and/or whether the conditional use zoning permit application process forbids the construction of a well where appellant's approved site plan showed only city water. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} Jeffery Arsuffi is the sole shareholder of J J Car Wash, Inc. (appellant), and his father, John Arsuffi, is a director, officer, and vice-president. In 1998, appellant requested a conditional use zoning permit to build and operate a car wash in the City of Columbiana, a municipal corporation. Appellant submitted the required site plan for review to the planning commission. The city has a public water supply derived from the city's various water wells. Appellant's site plan showed that city water would be used to operate the car wash. A public hearing was held, and the planning commission approved the request and plans.
 {¶ 3} In 2002, appellant notified the city of a desire to drill a water well in order to supplement city water. Appellant claimed that a certain feature of the carwash needed more water volume or gallons per minute (gpm) and more water pressure (psi) than the city's water supply was providing. The city responded that appellant had no right to drill a well on the property. The city conducted flow tests at various times from the tap in point and found the psi and gpm well above that which appellant claimed were required when he applied for the zoning permit and above the new figures he claimed to need. The city noted that they are only responsible for the water until it passes through the tap in point; the city also noted that appellant could increase the diameter of its two inch water line, which would allow more water to flow from the city's eight inch water line.
 {¶ 4} On November 3, 2003, appellant drilled a one hundred twenty foot deep well. Thus, on December 17, 2003, the city filed a complaint for an injunction and declaratory relief seeking to enjoin appellant from using the well, from drilling another well here and on other city property, and from conducting the carwash beyond the terms approved by the planning commission. The city asked the court to declare rights and obligations under the various city ordinances.
 {¶ 5} Specifically, the city alleged that ordinance 1042.11 prohibits water wells where water mains are available. The city also stated that a well was not on the site plan approved by the planning commission and that the plan was approved based in part on the representation that city water would be used. Thus, the city concluded the ordinances concerning the site plan review process were violated. The city later filed an amended complaint to allege that they need only prove a zoning violation to seek an injunction and that they need not prove irreparable harm or lack of an adequate remedy at law as in the usual injunction case.
 {¶ 6} An evidentiary hearing was on January 26, 2004. Various representatives of the city testified, and the Arsuffis testified on their own behalf. Tapes and documents from the Planning Commission, including the site plan, were submitted as exhibits.
 {¶ 7} On February 2, 2004, the court granted a preliminary injunction against appellant. The court agreed that the city need not prove the usual requirements for a preliminary injunction. The court found that the city understood that appellant would use city water when they approved his plan. The court found the well to be a new "structure," which was never contained in the site plan. The court also held that the ordinance purporting to prohibit wells was subject to interpretation and that the ordinance's requirement of an application for city water should be interpreted as prohibiting a well.
 {¶ 8} The parties thereafter stipulated that the evidence presented at the earlier hearing would be submitted for the decision on the permanent injunction and declaratory relief. On March 22, 2004, the court granted a permanent injunction on the same grounds as the preliminary injunction. Thus, appellant was permanently enjoined from using the well or from drilling a new well. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR LEGAL STANDARDS {¶ 9} Appellant's sole assignment of error provides:
 {¶ 10} "The trial court erred by granting the preliminary and permanent injunctions."
 {¶ 11} Appellant begins by citing our recent case of Blakeman's ValleyOffice Equip. Inc. v. Bierdeman, 152 Ohio App.3d 86, 2003-Ohio-1047, which outlined the following factors to consider and weigh in determining whether a preliminary injunction should be granted: substantial likelihood of success on the merits, irreparable injury, the lack of unjust harm to a third party, and public interest. Id. at ¶ 19. Appellant then states that for a permanent injunction, these same requirements exist plus the movant must show there is no adequate remedy at law.
 {¶ 12} Before delving any further into appellant's arguments, we must first declare (as the city and the trial court did below) that these balancing factors are not applicable in deciding whether to grant an injunction under R.C. 713.13, which states:
 {¶ 13} "713.13 Violation of zoning ordinance may be enjoined.
 {¶ 14} "No person shall erect, construct, alter, repair, or maintain any building or structure or use any land in violation of any zoning ordinance or regulation enacted pursuant to sections 713.06 to 713.12, inclusive, of the Revised Code, or Section 3 of Article XVIII, Ohio Constitution. In the event of any such violation, or imminent threat thereof, the municipal corporation, or the owner of any contiguous or neighboring property who would be especially damaged by such violation, in addition to any other remedies provided by law, may institute a suit for injunction to prevent or terminate such violation."
 {¶ 15} In applying R.C. 713.13, we must first determine whether the land use sought to be enjoined is (or is alleged to be) a violation of a zoning ordinance or regulation enacted pursuant to the specified parts of the Ohio Revised Code or Constitution. The statutorily specified parts of the Ohio Revised Code deal with the functions of a planning commission, such as controlling the height, design, and location of buildings and other structures within a municipal corporation. R.C. 713.06 to 713.12. The statutorily specified part of the Constitution provides: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Section 3, Article XVIII, Ohio Constitution.
 {¶ 16} Here, we are dealing with alleged violations of zoning ordinances, including the alteration of the planning commission's approved site plan. We are also dealing with an alleged violation of an ordinance adopted by the municipality under the powers granted to it in the Ohio Constitution. This ordinance, 1042.11, is indisputably an exercise of local self-government and an adoption of "such local police, sanitary and other similar regulations." Thus, we continue with our analysis of the importance of R.C. 713.13 with regards to the elements required for granting an injunction.
 {¶ 17} It is well-established that when a statute grants a specific right to seek an injunction to an individual or the state, the movant "need not aver and show, as under the ordinary rules of equity, that great or irreparable injury is about to be done for which he has no adequate remedy at law." Ackerman v. Tri-City Geriatric Health Care,Inc. (1978), 55 Ohio St.2d 51, 56. The Supreme Court thus concluded that the traditional rules for granting injunction do not apply to statutory injunctions. Id. The Court continued that balancing of the equities is unnecessary where an injunction is permitted by a statute designed to grant the government a remedy to enforce public policy. Id. at 56-57 (holding that the injunction can be granted if the statutory conditions exist; in that case, operating nursing home without a license while violating licensing requirements). See, also, Johnson v. United Ent.,Inc. (1957), 166 Ohio St. 149, 153-154.
 {¶ 18} More recently, the Supreme Court restated its position on the exception to the general rule that no injunction will issue where there exists an adequate remedy at law. Mid-America Tire, Inc. v. PTZ Trading,95 Ohio St.3d 367, 378, 2002-Ohio-2427, at ¶ 74. Once again, the Court stated the exception as: where a statute grants the remedy of an injunction, the movant need not show that irreparable injury is about to occur for which he has no adequate remedy at law. Id. at ¶ 75-76 (unless the statute specifies that the common law requirements for an injunction are applicable).
 {¶ 19} The above-quoted statute, R.C. 713.13, provides that the municipal corporation can seek an injunction (for violation of a zoning ordinance or other local regulation dealing with matters such as police or sanitary issues) "in addition to any other remedies." Thus, R.C. 713.13
is a special statute allowing the municipal corporation to obtain an injunction without showing irreparable harm would be incurred for which there is no adequate remedy at law. See Wooster v. Entertainment One,Inc., 9th Dist. No. 03CA042, 2004-Ohio-3846, at ¶ 67; City of Westlakev. Given (May 12, 1983), 8th Dist. No. 45407. See, also, Sharon Twp. Bd.of Trustees v. Crutchfield, 9th Dist. No. 3286-M, 2002-Ohio-4740, at ¶ 19; Union Twp. Bd. of Trustees v. Old 74 Corp. (Apr. 24, 2000), 12th Dist. No. CA99-07-073.
 {¶ 20} Moreover, city ordinance 1262.22 provides that if land or a building is about to be used in violation of the zoning code, the zoning inspector may institute injunction, mandamus, abatement or other action to enjoin the use, "in addition to other remedies provided by law." SeeCleveland v. Bosnak (1995), 104 Ohio App.3d 520, 523 (where the Eighth District noted that the Cleveland ordinance specifically authorized issuance of injunction even where legal penalties are available). For all of the foregoing reasons, the City of Columbiana only had to claim and prove the use of land or the erection, construction, alteration, repair, or maintenance of any building or structure in violation of any zoning ordinance or other regulation. The city did not have to establish irreparable harm for which there is no adequate remedy at law.
 {¶ 21} We must also note that appellant argues not only that the trial court erred in granting the permanent injunction but also in granting the preliminary injunction. However, we shall only review the propriety of the permanent injunction since it superseded the preliminary injunction under the facts of this case. See Procter Gamble Co. v. Stoneham (2000),140 Ohio App.3d 260, 269 (1st Dist.) (permanent injunction mooted the issue of the preliminary injunction); DN Dev., Inc. v. Schrock (Mar. 29, 1990), 5th Dist. No. 89AP080066 (temporary restraining order and preliminary injunction preempted by permanent injunction); VanCamp v.Riley (1984), 16 Ohio App.3d 457, 469 (preliminary injunction moot where superseded by same permanent injunction).
 {¶ 22} As such, we are not actually reviewing the propriety of the grant of the preliminary injunction. Still, we shall review the reasons set forth in the grant of the preliminary injunction because the court's permanent injunction refers the reader to such reasons. Thus, we are left with the issue as to whether, in granting the permanent injunction, the trial court properly found that appellant violated an ordinance when he drilled a well or that he will violate an ordinance if he utilizes that well for his car wash.
 CITY OF COLUMBIANA ORDINACE 1042.11 {¶ 23} Appellant contends that the relevant ordinances contain clear and unambiguous language and do not prohibit the well. Appellant breaks the analysis into two divisions. First, appellant addresses city ordinance 1042.11. Then, appellant addresses the relevance of the site plan, which was approved by the planning commission, and the zoning ordinances governing the site plan review process.
 {¶ 24} Ordinance 1042.11 provides as follows:
 {¶ 25} "Wells prohibited when water mains available.
 {¶ 26} "(a) When a dwelling or business building is to be erected within a reasonable distance of an existing water main, an application shall be made for water service. If the cost of a complete well installation, with all appurtenances, exceeds the applicant's portion of the cost of extending the water main, the distance shall be considered reasonable. The well installation cost shall be based upon the written estimate of a contractor acceptable to both the Municipality and the applicant.
 {¶ 27} "(b) No owner, agent, lessee, tenant or occupant of any lot or land located within the Municipality shall establish, construct, maintain or permit to remain in the Municipality a well for human consumption if such lot or land is within 100 feet of a water main constructed and used for the purpose of conveying water. When such a water main is available or is hereafter made available, a connection to the same shall be made and used within sixty days after it is available by such owner, agent, lessee, tenant or occupant, who shall, for such purpose, obtain a connection permit from the Division of Water and Sewer."
 {¶ 28} Appellant urges that 1042.11(b) does not apply to its well because the testimony established that a water main was not within 100 feet and most importantly, because the well is for various car wash uses and not for human consumption. Although at trial, the city originally seemed to alternatively rely in part on 1042.11(b), they now emphasize that 1042.11(b) is not relevant to the violation on which the city bases its case. (Appellee's Brief at 13). Thus, we need not specifically address the application of 1042.11(b) to appellant's well. As such, whether the well was or was not for human consumption is not at issue herein.
 {¶ 29} Appellant argues that 1042.11(a) does not prohibit construction and use of a well just because it requires an application for water upon construction of the building. Appellant concludes that it complied with the ordinance because an application for water was made and it had been using city water. Appellant describes the language of the ordinance as clearly and unambiguously permitting it to drill a well. Thus, appellant claims that the trial court erred when it interpreted an unambiguous ordinance and construed it as it did. In making this argument, appellant urges that we must construe the ordinance here in its favor.
 {¶ 30} We note that: "Zoning ordinances are in derogation of the common law. They deprive a property owner of uses of his land to which he would otherwise be entitled. Therefore, where interpretation isnecessary, such enactments are ordinarily construed in favor of the property owner." University Circle, Inc. v. City of Cleveland (1978),56 Ohio St.2d 180, 184 (emphasis added).
 {¶ 31} Contrary to appellant's suggestion, the rule providing for construction in favor of the property owner does not come into play until the court has determined as a matter of law that the ordinance is ambiguous and in need of interpretation. Appellant is arguing that the ordinance is not ambiguous and in need of interpretation. Thus, this proffer of law is premature. We move on to analyze the language of 1042.11(a).
 {¶ 32} The same rules for reviewing a statute apply when reviewing an ordinance. For instance, the starting point is the plain language of the ordinance. If the plain language of the ordinance is clear and unambiguous, then we merely apply the language without interpretation or construction. See Bosher v. Euclid Income Tax Bd. of Rev.,99 Ohio St.3d 330, 2003-Ohio-3886, at ¶ 14; Cleveland Elec. Illum. Co.v. Cleveland (1988), 37 Ohio St.3d 50. If the language of the ordinance is unclear or ambiguous, then we review the trial court's interpretation of the ordinance by resorting to an evaluation of the legislative intent behind the ordinance. Id.
 {¶ 33} The interpretation of a statute is a matter of law and thus we review the legal decisions de novo, such as whether the statute is ambiguous or not. Yet, we defer to the trial court's decision on various issues requiring a weighing of the evidence, such as the city's professed interpretation and concerns, which come into play only if we find the statute ambiguous.
 {¶ 34} "Courts are commanded to refrain from inserting or deleting words. However, we are also directed to `give effect to the words used * * *'." Cleveland Elec., 37 Ohio St.3d at 50. We may not restrict, constrict, qualify, narrow, enlarge, or abridge the clear meaning of a law to suit the particular facts of a case at bar. Boardman Twp. Bd. ofTrustees v. Fleming (1996), 110 Ohio App.3d 539, 542 (7th Dist.). The words used must be given their usual, normal, and customary meaning and read in context. Id.; R.C. 1.42.
 {¶ 35} Appellant complains that the court considered the title of the ordinance. He notes that the city conceded that the law is not encompassed in the caption of the ordinance, "WELLS PROHIBITED WHEN WATER MAINS AVAILABLE." It is true that in evaluating whether the language of 1042.11(a) is unambiguous, we cannot look to the title of the ordinance because such is not substantive law. See Commercial Credit Co. v.Schreyer (1929), 120 Ohio St. 568, 572, 574-575. However, if the ordinance is found to be ambiguous for other reasons, then the title can be viewed to ascertain legislative purpose and intent. Id.
 {¶ 36} It could be argued that we cannot use the doctrine of in pari materia at this point since this rule of construction is to be used only after some doubt or ambiguity exists. See State ex rel. Burrows v.Industrial Comm. (1997), 78 Ohio St.3d 78. The doctrine of in pari materia typically means that in interpreting one statute, the court views other statutes on the same or similar subject matter and reads them harmoniously. See State ex rel. Herman v. Klopfliesch (1995),72 Ohio St.3d 581, 585.
 {¶ 37} Here, we are dealing with one ordinance, with two parts (a) and (b). Still, the Supreme Court has also defined the rule of in pari materia as construing "all parts of a statute or rule." State v. Jenkins
(1984), 15 Ohio St.3d 164, 225, 238, fn. 58. Since the Court has stated that "in pari materia" is a rule of construction to be used only if the language is ambiguous and since they have stated that the rule of in pari materia also includes the parts of one statute, especially where those parts deal with different scenarios, we shall refrain from reading 1042.11(b) to determine whether 1042.11(a) is ambiguous. See Burrows,
supra. Rather, we will save 1042.11(b), a separate and distinct part of the statute, for review only if we find that 1042.11(a) is ambiguous after reading 1042.11(a) in isolation.
 {¶ 38} Before pronouncing whether the language of 1042.11(a) is unambiguous and clear or ambiguous and indefinite, we shall restate such language at this time:
 {¶ 39} "When a dwelling or business building is to be erected within a reasonable distance of an existing water main, an application shall be made for water service. If the cost of a complete well installation, with all appurtenances, exceeds the applicant's portion of the cost of extending the water main, the distance shall be considered reasonable. The well installation cost shall be based upon the written estimate of a contractor acceptable to both the Municipality and the applicant."
 {¶ 40} This language does not plainly and clearly allow a property owner to drill a well, even when he erects a building within a reasonable distance of a water main, as long as he also applies for water service. Requiring an application to be made for water service in conjunction with the definition of what is a reasonable distance (based upon the potential cost of a well) results in an ambiguity as to whether a well is prohibited. One could rationally argue that the statute provides that if the cost of the well would be more than the cost to connect to city water, then city water rather than a well must be used on the property, and thus, a well is prohibited in such case. As such, 1042.11(a) is ambiguous.
 {¶ 41} (We note that the city does not argue here that the language is unambiguous in its favor, e.g. wells are clearly prohibited when a building is erected within a reasonable distance of a water main. Rather, they rely on interpretation and thus concede ambiguity.)
 {¶ 42} Since we found the language is ambiguous and uncertain, various rules of construction apply in order to determine and enforce the intent of the legislature. Pursuant to R.C. 1.49, if a statute is ambiguous, then the court must determine the legislative intent by considering: (A) the object sought to be attained; (B) the circumstances under which the statute was enacted; (C) the legislative history; (D) the common law or former statutory provisions, including laws upon the same or similar subjects (in pari materia); (E) the consequences of a particular construction; and (F) the administrative construction of the statute. SeeBosher, 99 Ohio St.3d 330, at ¶ 14 (where the court applies the Revised Code's rule of statutory construction to a city's ordinances).
 {¶ 43} First, we return to the Supreme Court's statement that zoning resolutions and the like are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled. See University Circle, 56 Ohio St.2d at 184. Therefore, such resolutions are ordinarily construed in favor of the property owner. Saunders v. Clark County Zoning Dept. (1981),66 Ohio St.2d 259, 261, citing Id. "Restrictions on the use of real property by ordinance, resolution or statute must be strictly construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed." Saunders, 66 Ohio St.2d at 261.
 {¶ 44} Although the title of the ordinance is not substantive law, it is permissible to use the title to determine the legislative intent behind the ordinance once the ordinance has been found to be ambiguous.Commercial Credit Co. v. Schreyer (1929), 120 Ohio St. 568, 572, 574-574. The title here, "WELLS PROHIBITED WHEN WATER MAINS AVAILABLE," is clearly probative as to the legislative intent behind 1042.11(a). This title allows one to reasonably conclude that the purpose of the ordinance was to prohibit new water wells and not just to require application for city water. See R.C. 1.49(A), (B), (C).
 {¶ 45} Appellant complains that the trial court gave improper weight to the city's interpretation and traditional use of the ordinance. Appellant claims the testimony presented by the city only outlined a vague interpretation of the ordinance and that other property owners have wells in the city. For instance, some of the answers given by the assistant zoning inspector/assistant building inspector/planning commission member could be construed in appellant's favor on the city's interpretation of the ordinance. When asked if there is an ordinance that prevents a well not for human consumption, this witness testified that he did not know of one. (Tr. 95, 103).
 {¶ 46} However, when defense counsel first asked this witness about a well for non-human consumption, he merely stated that the ordinance does not expressly mention such a well. (Tr. 78). Thereafter, when asked to interpret 1042.11(a), he stated that he does not have the qualifications to make such a legal interpretation. (Tr. 79). It was not until he was asked over and over, did he finally answer in the manner sought by appellant.
 {¶ 47} Rather than relying on this witness to present an interpretation of 1042.11, the city presented this witness to establish the effect of the failure to disclose future use of a well in the site plan presented to the planning commission, of which he was a member at that time. This witness was relying on appellant's omissions in the site plan as the basis for his opinion that use of the well should be enjoined, stating that he would not have voted for approval if he knew a supplemental well would be constructed and revealing that the plan would not have passed without his approval. (Tr. 69-78). It was the defense rather than the city who asked this witness for his interpretation of 1042.11(a).
 {¶ 48} Regardless, others clearly testified to the city's interpretation of the ordinance. First, the water superintendent, who has held that position for seventeen years, testified when asked by defense counsel, that he interpreted 1042.11(a) as prohibiting this well. (Tr. 60-61). Later, the city manager of over eleven years testified that it was the city's belief that 1042.11 is violated even if the well is not for human consumption. (Tr. 140). He noted that a well violates the mandate of 1042.11(a) that those within a reasonable distance apply for city water. (Tr. 142).
 {¶ 49} Additionally, the mayor, who has been on the planning commission as mayor for twelve years and who is at the top of the city's executive, law enforcement branch, testified that the city and its lawyers have always interpreted 1042.11 as prohibiting wells such as this. (Tr. 111-112, 117). He stated that 1042.11(a) is still violated by the use of a well even if city water is also used. (Tr. 114). The mayor stated that wells not for human consumption are prohibited unless established before enactment of the 1974 city code. (Tr. 117).
 {¶ 50} As for appellant's contention that the city's interpretation is not credible because other city properties have wells such as his, appellant did not establish that these wells were constructed in violation of the ordinance at hand. In other words, if the ordinance did not exist when the buildings he refers to were constructed, then 1042.11(a) would not prohibit use of the wells, and 1042.11(b) would only prohibit use of the wells if they were for human consumption and were within one hundred feet of a water main. In fact, the city opined that some of the wells mentioned by appellant were constructed before the present code went into effect and that two of the wells mentioned were outside of the city limits. Regardless, just because the city is unaware of certain ordinance violators does not destroy the city's construction or tradition of use of the ordinance where a violator becomes a whistle-blower at his trial.
 {¶ 51} In interpreting the statute, the court can consider the city's interpretation that new wells are prohibited where the cost of the well is more than the cost to connect. See R.C. 1.49(F). Here, appellant does not dispute that the cost of the well was more than the cost to connect to city water and that the ordinance required him to apply for and connect to city water in the first instance.
 {¶ 52} Other factors also support the trial court's interpretation of the ordinance, such as an evaluation of "the object sought to be attained" by the ordinance. See R.C. 1.49(A). The court could reasonably conclude that the city's purpose in enacting 1042.11(a) was to force all new businesses and dwellings to use strictly city water (regardless of whether the water was for human consumption or not) if it was not too costly to tap in to a water main. Besides financial reasons, municipalities often seek to limit water wells for health reasons, such as fears of contamination from decades of septic system leaching, industrial run off, or farming.
 {¶ 53} Next, we turn to 1042.11(b) for help in interpreting 1042.11(a). It is clear that the city's purpose in enacting part (b) was to state that if the water is for human consumption, then one must tap in to city water if they are within one hundred feet of a water main, regardless of the cost to connect set forth in part (a) and regardless of whether the well was established prior to the enactment of the ordinance. See R.C. 1.49(D). Thus, 1042.11(b) has a purpose to mandate city water even for pre-existing buildings where human consumption is involved.
 {¶ 54} On the other hand, 1042.11(a) deals with new buildings and does not distinguish between human consumption and not for human consumption. The language of 1042.11(b) read in conjunction with 1042.11(a) tends to support the city's interpretation of part (a) as mandatory city waterinstead of well for all new buildings where the cost is reasonable, regardless of whether the use is for human consumption or not.
 {¶ 55} Moreover, the consequences of imposing appellant's construction of the ordinance on the city are far-reaching. See R.C. 1.49(E). This would mean that all businesses or dwellings who originally complied with 1042.11(a) by applying for water could thereafter drill a well. In relation to this, there is fear in the city's water department that the city water supply, which is obtained from seven active wells on the south side of the city near appellant, may be diminished. (Tr. 139). There is also concern that even if the current supply is not diminished, the inevitable future exploration for new water sources will be affected. (Tr. 139). Appellant's well is 120 feet deep, and although most of the city's wells are over 200 feet deep, one is only approximately 100 feet deep. (Tr. 202). Appellant stipulated before trial that expert testimony was not required in order for the opinions to be expressed on the impact of private wells on the city aquifers. (Tr. 9).
 {¶ 56} Further, there is fear that a business using both well and city water could cause cross-contamination of the city's drinking supply due to resulting backflow. (Tr. 58-59, 121, 139). Additionally, the city's concern of lost revenue is valid, both in the form of decreased water bills and in the fact that a second meter would have to be read at each property since city sewer would still be used to dispose of the used water. The city also noted that even though appellant would not use as much water anymore, the city would still have to maintain the system as if appellant was still a full customer because the well could fail at any time. (Tr. 120-121, 134).
 {¶ 57} The consequences of the city's construction of the ordinance on appellant do not outweigh the city's concerns and right to enforce their code. The fact that appellant spent $9,000 on a well that it knew the city was against does not work in his favor. Appellant could have taken offensive action, administratively or judicially. Or, appellant could have prompted the city to seek an injunction before actually drilling the well, by tipping them off that drilling was about to begin. Instead, appellant's attorney went to meetings with city officials in 2002 and stated nothing more about the well thereafter. Then, over a year later, on November 3, 2003, appellant drilled the well; the city discovered this fact after the drilling and prior to the well being put into use.
 {¶ 58} Further, in the site plan, appellant disclosed a need for 45 psi and 75 gpm. Appellant now claims to need 60 psi and 75 gpm. Arsuffi claims that when they are very busy, their internal equipment gauges have shown readings as low as 30 gpm. The problem lies with the emptying of reserve tanks that appellant claims cannot be filled fast enough with city water.
 {¶ 59} However, the city stated that flow tests a couple weeks prior to the hearing and a year ago both showed 65 psi and 790 gpm. (Tr. 54). After running through a two inch in diameter line for 130 feet to the building, there should be 175 gpm if the car wash's internal mechanisms do not unduly restrict the flow. (Tr. 55). There was not a mandatory backflow valve and appellant's water softener would also restrict pressure. (Tr. 57). The city also pointed out that the well test appellant had performed on the new well did not show the psi available and only showed 50 gpm. (Tr. 49-50).
 {¶ 60} The water superintendent noted a discussion with John Arsuffi regarding his other car wash in town where John revealed that all he needed was water volume and that he could then adjust pressure internally. (Tr. 57-58). Arsuffi's testimony seemed to confirm this when he stated that the pressure available on the new well was irrelevant because it was merely being pumped into a holding tank. (Tr. 50). This disputed his testimony that he drilled a well because he needed more volume and more pressure. (Tr. 47).
 {¶ 61} Although appellant partially disputed this, the water superintendent advised that the water flow could be increased if appellant increased the two inch line to four or more inches, all the way up to the eight inch diameter of the city's water main. (Tr. 45-46, 57). Appellant also did not credibly explain why larger holding tanks would not solve the refilling problems. (Tr. 50).
 {¶ 62} As such, the consequences to appellant of the city's interpretation of the ordinance are outweighed by the factors outlined above which support such an interpretation. To conclude the analysis on 1042.11(a), we agree that the ordinance is ambiguous. Considering all of the indices of legislative intent, the statute could reasonably be interpreted in the manner chosen by the trial court.
 {¶ 63} As previously noted, appellant also sets forth arguments under this assignment of error dealing with the site plan. Since we found that 1042.11(a) is ambiguous and could be interpreted as urged by the city, we need not address the issues surrounding the site plan as it was an alternative reason for prohibiting the well.
 {¶ 64} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.