FREDERICKS, APPELLEE, *v.* BIRKETT L. WILLIAMS CO., APPELLANT.

(No. 446—Decided October 28, 1940.)

*Messrs. Young & Young,* for appellee.
*Mr. Lloyd D. Miller,* for appellant.

OVERMYER, J.  Appellant, the Birkett L. Williams Company, defendant below, prosecutes this appeal to reverse a judgment entered against it and in favor of appellee in the Court of Common Pleas of this county. The action was one for personal injuries and property

damage suffered by plaintiff, and loss of services and expenses of his wife and children, as a result of a collision of automobiles on March 25, 1939. The plaintiff's car was operated at the time by himself, and the other car allegedly was operated by the agent or servant of defendant in and about defendant's business. The verdict and judgment were for $8,915.83.

The assigned errors are failure of the court to grant motions, seasonably made, for a directed verdict and for a judgment notwithstanding the verdict, error in the rejection of evidence, error in submitting the question of agency of the driver to the jury and failure to grant a new trial.

In the consideration of the errors assigned, we do not deem it necessary to recite in detail all the facts connected with the collision. Appellant's argument and briefs are devoted principally to the matter of the rejection of evidence and to the subject of agency of the driver of the car, that is, whether such driver, a Mr. Cozad, was at the time of the collision the agent or servant of the appellant company and engaged on its business. The facts necessary to an exposition of these complaints will be somewhat fully stated.

At the time here involved the Birkett L. Williams Company, which will be referred to as the company, was engaged in the sales and service of Ford automobiles in Cleveland, Ohio. On the date of the collision, and for some time prior thereto, H. Clarke Cozad was in the employ of the company as sales manager, with a number of salesmen under him and, according to the testimony of appellant's officers, with authority to sell Ford automobiles for the company "anywhere, any place and to anybody." Appellant claims to have sold to Cozad, and Cozad claims to have purchased, on the afternoon of the day of collision, a new Mercury automobile, and to have then executed papers for the purchase by himself from the company of such automobile.

The papers consisted of a new-car invoice, a new-car retail buyer's order, a chattel mortgage covering deferred payments and an insurance policy. Application for a transfer of title was made out but no certificate was issued to Cozad until March 29, 1939, the claimed sale and purchase and the collision having occurred on the afternoon and evening, respectively, of Saturday, March 25, 1939.

The assistant secretary of appellant, a Mr. Mulheran, who, in the absence of the secretary, handled the transaction, testified as follows:

"Q. Had the certificate of title been issued to Mr. Cozad on the afternoon of March 25th, or prior to that date, for this particular car? A. No, you couldn't issue a certificate of title on that particular date anyway as March 25th was Saturday and this transaction occurred in the afternoon and the courthouse was closed at noon; and as a regular routine where a customer purchases a new car late in the afternoon the papers are ordinarily not made up until the following day."

The evidence offered by appellant as to the claimed sale and purchase and change of ownership of the car in question was, upon objection, rejected by the court, upon the ground that there is but one way to prove ownership of an automobile in Ohio and that is to produce a certificate of title. Offers of proof covered the transaction as above outlined. In its ruling on this tendered evidence the trial court was correct, so far as the ownership of the automobile was concerned. Section 6290-4, General Code; *Crawford Finance Co.* v. *Derby*, 63 Ohio App., 50, 25 N. E. (2d), 306. We shall later discuss the competency of this evidence on the question of agency of the driver on the trip in question.

On the afternoon in question, appellant delivered to Cozad and he took possession of a new Mercury car at the offices of the company and, according to Cozad's

undisputed testimony, he, having no license plates for the new car, asked for and was given by someone at the offices of the company a set of dealer's license plates belonging to the company. Cozad then attached these license plates to his new car and about 4:45 p. m. started to drive the car to Clyde, Ohio, a distance of about 75 miles. When reaching a point several miles east of Bellevue, the collision between the new car driven by Cozad and the car owned and operated by appellee occurred.

On the matter of license plates, Cozad testified as follows:

"Q. Now, what license tags did you have on this car at the time of the accident? A. I had a set of dealer's license tags.

"Q. Where did you get them? A. At the office of the Birkett L. Williams Company.

"Q. Who gave them to you? A. I could not tell you that because it is customary for me to go to the office and say 'Give me a set of dealer's plates,' and whoever is at the window—there's three or four girls, Mr. Mulheran (the assistant secretary) and three or four others in the office, and they hand them to me.

"Q. Did you put those dealer's plates on your automobile? A. I did.

"Q. Under whose authority did you put them there? A. I think perhaps I exceeded my authority a little, but I assume I did it under my own authority."

Mr. Mulheran, the assistant secretary of the company, testified as follows:

"Q. Now, on this car (photo-exhibit) is a set of license plates, D. over 2557, did you give these license plates to Mr. Cozad when he left your place of business on March 25, 1939?"

An objection was made to this question and an offer was made to prove that he did not give them to Cozad and did not know that Cozad took them or used them.

Section 6290-4, General Code, provides as follows:

"No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for said motor vehicle for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this chapter."

Section 6290-5, General Code, provides in part:

"In the case of the sale of a motor vehicle by a dealer to a general purchaser or user, the *certificate of title shall be obtained in the name of the purchaser by the dealer* upon application signed by the purchaser and in all other cases such certificates shall be obtained by the purchaser. In all cases of transfers of motor vehicles, the application for certificate of title shall be filed within three days after the delivery of such motor vehicle." (Italics ours.)

This provision definitely places upon the dealer the responsibility of furnishing to the purchaser a proper certificate of title, application for which must be filed with the clerk of courts within three days after delivery of the motor vehicle. This was not done.

Section 6301-1a, General Code, provided as follows:

"Any placards issued by the registrar and bearing the distinctive number assigned to a manufacturer or dealer pursuant to the provisions of section 6301 of

the General Code may be displayed on any motor vehicle, other than commercial cars owned by the manufacturer or dealer or lawfully in the possession or control of the manufacturer, his agent or employee, or the dealer, his agent or employee for purpose of sale *and shall be displayed on no other motor vehicle.* Such placards may be displayed on commercial cars only when such cars are in transit from a manufacturer to a dealer, or from a dealer to a purchaser, or when such cars are being demonstrated for sale or lease and shall not be displayed when such cars are being used for delivery, hauling, transporting or other commercial purpose." (Italics ours.)

It is our view, under the undisputed evidence in the record, that by force of the statutes the company is precluded from denying ownership of the car at the time here involved. Cozad did not own it for he had no certificate of title, the only evidence of ownership recognized by law. He may have intended to become the owner of it but he was not then the owner. Having no license plates, he attached to the car dealer's plates furnished by, or at least secured at, the offices of the company, in violation of Section 6301-1a, General Code.

It is the claim of appellant, and supported by the testimony of Cozad, no other witnesses testifying on the subject, that the trip in question was undertaken by Cozad solely for the purpose of visiting his son and family at Clyde and bringing back to Cleveland his wife who had been visiting the son. Appellant further contends that on the trip he did not transact, and had no intention of transacting, any business for the company or any business in the course of, or connected with, his employment as sales manager. There is no evidence that he made any attempt to demonstrate or sell to anyone, and he denies having done so or having any literature in the car to be used for sales purposes. Cozad admits a violation of Sections 6301-1a and

12618-2, General Code, by using the company's dealer's license tags, and as heretofore shown, he violated Section 6290-17, General Code, by operating the car without a certificate of title, whether on a mission of his own or otherwise.

The foregoing sections are penal statutes, it is true, and do not in and of themselves necessarily furnish a basis for civil liability in Ohio, but, under the authorities, the presence of dealer's tags upon an automobile may become important, and in some jurisdictions is determinative, of the question of agency.

In Ohio the authority called to our attention on the point is the case of *Harten-Brooks Co.* v. *Gayer* (Sixth Appellate District, unreported), where it is said:

''Our opinion is that the fact that the license plates issued to defendant were displayed upon the automobile which Mason was operating at the time of the collision is some evidence of the ownership by the defendants of the automobile, *and that it was being operated under their authority and upon their business.*'' (Italics ours.)

Huddy on Automobiles (9 Ed.), 394, Section 180, states the general rule to be that ''a dealer's tag, issued * * * upon condition that 'it should not be used for any other purpose than testing or demonstrating the vehicle to a prospective purchaser, or in removing the same from place to place for the purpose of sale,' is *prima facie* evidence that, at the time of an accident, either the dealer or some one acting under his authority was operating the car, and he has the burden of showing it was not so operated.'' Citing *Haring* v. *Connell*, 244 Pa., 439, 90 A., 910; 5 American Jurisprudence, 842, Section 612.

In most jurisdictions with statutes similar to those of Ohio, the rule is that failure to register title or to secure proper license plates, as required by statute or ordinance, will not alone subject the owner or operator

to liability for injuries caused in operating an automobile on the highway. This is on the theory that such failure is deemed a collateral act, between which and the injury there is no relation of cause and effect. 1 Blashfield, Cyclopedia of Automobile Law and Practice, 418 *et seq.*, Section 598 *et seq.*; 5 American Jurisprudence, 574, Section 112.

In Massachusetts, the statute makes a car so operated an outlaw, a trespasser and a nuisance upon the highway. In Ohio, the question of agency such as here presented must be governed by the rule of *respondeat superior*. *White Oak Coal Co.* v. *Rivoux, Admx.*, 88 Ohio St., 18, 102 N. E., 302; *Braun* v. *Averdick*, 113 Ohio St., 613, 150 N. E., 41; 26 Ohio Jurisprudence, 628, Section 607.

Under Ohio statutes and decisions and in most other jurisdictions, the most that can be said under the facts here shown is that a rebuttable presumption arose that Cozad was operating the car owned by the company and operating it on company business; and that the evidence offered in rebutting the presumption thus arising presented a jury question. *Ball* v. *Hail*, 196 Ark., 491, 118 S. W. (2d), 668.

The court did not err, therefore, in overruling defendant's motions for directed verdicts, and overruling the motion for judgment notwithstanding the verdict.

The assigned error as to the exclusion of evidence, above-mentioned, is of serious moment. We are of opinion that while the evidence was incompetent on the question of the ownership of the car, as above pointed out, it was competent on the question of agency. The intentions of the driver in seeking to acquire ownership of the car at the time he did, the defendant company's part in the transaction and what, if any, knowledge the company had as to the uses intended at the time are all matters that the jury might have properly considered in connection with Cozad's own testimony

on the subject and that of officers of the company, together with all other evidence on the subject of Cozad's mission on the particular trip and the company's part in it.

The question of agency being one of great importance to the defendant, the jury would be entitled to have such of the proferred evidence on the subject as would shed light on matters occurring before, but not after, the collision. We think such evidence should have been received for the purposes indicated and that its exclusion was prejudicial error.

The judgment will be reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

CARPENTER and LLOYD, JJ., concur.