[Civ. No. 2745. Fourth Dist.—June 12, 1941.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent, v. NATIONAL FUNDING CORPORATION (a Corporation), Appellant.

322

H. E. Lindersmith, Elmer P. Bromley and Shoop & Maury for Appellant.

Louis Ferrari, Edmund Nelson, Hugo A. Steinmeyer and John E. Walter for Respondent.

KELLY, J., *pro tem.*—On or about December 10 or 12, 1936, the Colorado Motor Sales Company was engaged in the business of selling Graham automobiles at the city of Pasadena, California. The sales force was in charge of one H. A. Merrill, as sales manager. On the floor for exhibition and sale was a Graham coupe, serial number 120014, engine number 115182, which is the hapless *corpus* of the devious adventures hereinafter noted. On or about the date indicated, one Kenneth H. Knights went to the sales room of the Colorado Motor Sales Company with the view of purchasing a car. He examined and was pleased with the described coupe. Mr. Knights being in need of financial aid in consummating his purchase, went to the Bank of America National Trust and Savings Association and arranged for a loan of $754.21. The bank approved his application and advanced the money in the following manner: A conditional sales contract was drawn and executed wherein Knights was

named as purchaser, and Colorado Motor Sales Company as seller, describing the coupe and reciting the usual provision of reservation of title in the seller until payment made. The Colorado Motor Sales Company then executed an assignment of the contract to the bank, coupled with a warranty of title. The warranty recites that the Colorado Motor Sales Company has the right to make the assignment and that the coupe is free from liens and/or incumbrances. The contract, assignment and warranty, having been duly executed, were delivered to the bank which thereupon issued its sight draft for $754.21 and on December 23, 1936, the money was paid to the Colorado Motor Sales Company. The coupe was delivered to Knights who was advised by the Colorado Motor Sales Company that his license and registration slip would come through the mail.

At the trial it was stipulated by the attorneys of record that in this transaction Knights and the bank acted in the best of good faith and had no actual knowledge of any prior liens or incumbrances on the coupe or any claims adverse to the title then transferred. So far, we have a simple transaction of a contract of purchase and sale, financed by a banking institution acting within the proper scope of its legitimate business. At this point simplicity departs.

Some six weeks after the sale transaction as aforesaid, Knights, not having received his license or registration certificate, began inquiries and investigation. He discovered that the Colorado Motor Sales Company had gone out of business. Investigation further revealed that the coupe had, previous to his purchase, been registered in the Department of Motor Vehicles at Sacramento, in the name of Colorado Motor Sales Company as registered owner, and Commercial Discount Company as legal owner. This record was accomplished by the amazing expedient of Colorado Motor Sales Company. as seller, purporting to sell to Colorado Motor Sales Company, as purchaser, the coupe in question on November 2, 1936. The transfer was registered on November 10, 1936. It further developed that at all times in the transactions mentioned the Colorado Motor Sales Company was the fictitious name under which Fairbanks-Fee, Inc., a corporation, was doing business. The corporation was duly licensed and qualified to do business in the State of California. However, the certificate required by section 2466 of

the Civil Code was at no time filed or published, thereby subjecting the Colorado Motor Sales Company, its assignee or assignees, to the penalties provided by section 2468 of the Civil Code.

It further appears that on November 28, 1936, Fairbanks-Fee, Inc., entered into a financing agreement whereby Seaboard Finance Company would finance and floor automobiles for it under a trust receipt, and on that date a statement of trust receipt financing was executed by these last two named companies which was immediately forwarded to the Secretary of State of California. This statement makes no mention of Colorado Motor Sales Company, the fictitious name under which Fairbanks-Fee, Inc., was operating at that time, and whose contract with the buyer (Knights) the Colorado Motor Sales Company assigned to the bank. At about the same time that the trust receipt was executed the Commercial Discount Company endorsed and delivered to the Seaboard Finance Company the ownership certificate of the coupe. The Seaboard Finance Company thereafter held such certificate which was at no time transferred into its name in the office of the Motor Vehicle Department. The Seaboard Finance Company was the fictitious name and style under which National Seaboard Corporation, a corporation, was doing a financing business. Throughout these various transactions the coupe stood innocently on the sales floor of Colorado Motor Sales Company until it was delivered to Knights under his executory contract as aforesaid.

On December 31, 1937, National Seaboard Corporation, a corporation, was dissolved and all of its assets were transferred to the National Funding Corporation, a corporation, defendant and cross-complainant below, and appellant here. The foregoing transactions having been discovered, demand was made upon the Seaboard Finance Company for delivery of the certificate of ownership which, being refused, this action was brought by the Bank of America National Trust and Savings Association against Seaboard Finance Company, a corporation, and Commercial Discount Company, a corporation, praying for declaratory relief and that the plaintiff be adjudged legal owner of the coupe subject to the rights of Kenneth S. Knights, as purchaser, and directing the defendants and each of them to duly endorse the certificate of ownership of said automobile and to deliver the

same to the plaintiff and for general relief. Thereafter, National Funding Corporation intervened and, on motion, was granted leave to file an answer and cross-complaint as successor to the assets of National Seaboard Corporation, a corporation. The National Funding Corporation, by its answer, in a separate affirmative defense, alleged that the maintenance and prosecution of the action was barred by section 2468 of the Civil Code in that the plaintiff is the assignee of Fairbanks-Fee, Inc., a corporation, which was during December, 1936, doing business under the fictitious firm name of Colorado Motor Sales Company, and had not complied with the provisions of section 2466 of the Civil Code. By its cross-complaint, National Funding Corporation prays that its title to the coupe be quieted and for delivery to it of that automobile or its value. Issues being joined, the case was tried by the court without a jury, findings were settled, and judgment was entered for the plaintiff from which the National Funding Corporation prosecutes this appeal.

(1). The appellant first contends that because the plaintiff's assignor, the Colorado Motor Sales Company, had failed to comply with section 2466 of the Civil Code, recovery by the plaintiff is barred by virtue of section 2468 of the Civil Code. Section 2468 of the Civil Code reads, in so far as the same applies to this litigation, as follows:

''No person doing business under a fictitious name, or his assignee or assignees, . . . shall maintain any action upon or on account of any contract or contracts made, or transactions had under such fictitious name, . . . until the certificate has been filed and the publication has been made as herein required.''

The trial court found that Fairbanks-Fee, Inc., a corporation, was, on or about December 22, 1936, doing business under the fictitious firm name and style of Colorado Motor Sales Company. It is perfectly clear that the interest of the bank is derived from an assignment by Colorado Motor Sales Company of its right, title and interest in the conditional sales contract wherein Knights was named as purchaser, and in all the property therein described and all moneys to become due thereunder.

Respondent argues that as this is an action for declaratory relief, it cannot be said to be an action upon or on account of any contract or transaction had under the fictitious name.

We believe that such a contention cannot be sustained. We cannot concede that any rights can be claimed by the plaintiff bank other than those created by the conditional sales contract and the assignment thereof. ■■■ However, we are constrained to hold that the National Funding Corporation is estopped from asserting the bar of the statute.

To fully appreciate the position of the respective parties in the instant litigation, it must be kept in mind that the plaintiff bank acquired its interest, title and right to the coupe by assignment made by the unregistered Colorado Motor Sales Company of its conditional sales contract with Knights. The National Funding Corporation, appellant here, acquired its right, title and interest to the coupe by a transfer to it of the assets of the National Seaboard Corporation, a corporation, upon dissolution thereof. The National Seaboard Corporation in turn acquired any right, title or interest which it may have had in the coupe as the progenitor of the Seaboard Finance Company, the fictitious name under which the National Seaboard Corporation was doing business. The Seaboard Finance Company in turn acquired any right, title or interest in the coupe which it may have had by virtue of the flooring contract and trust receipt wherein Fairbanks-Fee, Inc., a corporation, assumed title to the coupe which then stood in the name of Colorado Motor Sales Company, the unregistered fictitious name under which the Fairbanks-Fee, Inc., was doing business. So far, we must hold that Fairbanks-Fee, Inc., and National Seaboard Corporation, a corporation, stand in the shoes of Colorado Motor Sales Company, at this point the registered owner of the coupe. ■■■ The ownership certificates were not negotiable and any interest acquired by reason of a transfer thereof is subject to all of the equities that might be urged by the bank against the Colorado Motor Sales Company. If it be contended that the Seaboard Finance Company acquired an interest as registered owner of the coupe by reason of assignment to it of the ownership certificate, which named the Commercial Discount Company as legal owner, then we are confronted with the failure of these parties to register the transfer with the Motor Vehicle Department at Sacramento. A failure to cause such registration nullified any transfer of title by virtue of the endorsement and delivery of the certificate by the Commercial Discount Company as legal owner to the Seaboard Finance

Company. Section 186 of the Vehicle Code as it read at the time of these several transactions, is as follows:

"When transfer deemed complete. No transfer of the title or any interest in or to a vehicle registered hereunder shall pass nor shall delivery of any said vehicle be deemed to have been made and any attempted transfer shall not be effected for any purpose until transfer of registration is made and the department has issued a new certificate of ownership and registration card with respect thereto as provided herein, except as a transferor may be estopped by law to deny a transfer and except as provided in sections 178 and 180 hereof and in Chapter 3 of this division."

We must then hold that Commercial Discount Company, which does not appear in this appeal, retained legal title if we assume that the certificate naming the Colorado Motor Sales Company both as seller and as purchaser and as registered owner and the Commercial Discount Company as legal owner had any validity whatever. In other words, legal title remained in the Colorado Motor Sales Company, the unregistered, or in the Commercial Discount Company, the stranger.

In any event, any interest which the National Funding Corporation, a corporation, appellant here, has at any time acquired proceeds from the Colorado Motor Sales Company. Surely it cannot be said that the Colorado Motor Sales Company could set up its failure to comply with section 2466 of the Civil Code as a defense to the plaintiff's claim in the instant litigation, and those who acquired interest from the fictitiously named concern are subject to the same infirmities unless the doctrine of estoppel applies.

The purpose of section 2466 of the Civil Code is plain. That section, and section 2468 of the Civil Code are designed to protect those dealing with an individual or partnership doing business under a fictitious name, and were never intended to confer rights or advantages upon the individual or firm failing to comply with the law. These statutes provide a shield for the innocent and the law-abiding, and do not arm the law violator with a weapon of unconscionable defense.

"The object of section 2466, *supra*, is that public notice shall be given and a public record made of the individual members of partnerships with such definiteness and particularity that those dealing with them may at all times know

who are the individuals with whom they are dealing or to whom they are giving credit or becoming bound." (*Andrews* v. *Glick*, 205 Cal. 699, 701 [272 Pac. 587].) (See, also, *Meads, Seaman & Co.* v. *Lasar*, 92 Cal. 221, 226 [28 Pac. 935].)

The foregoing does not affect the rights of the plaintiff bank to maintain this action even though its interest in the coupe was acquired by a transfer to it of the conditional sales contract by the Colorado Motor Sales Company. Neither the last-named company nor its parent Fairbanks-Fee, Inc., a corporation, nor any assignee of the corporation or of its illegitimate child may assert the failure of the latter to register under section 2466 of the Civil Code as a defense. (*Washington Lumber, etc., Co.* v. *McGuire*, 213 Cal. 13 [1 Pac. (2d) 437].)

"Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." (Code Civ. Proc., sec. 1962, subd. 3.)

Be it remembered that when the Colorado Motor Sales Company assigned its conditional sales contract to the plaintiff bank it accompanied the same by a solemn written warranty reciting its right to sell the coupe and that the same was not encumbered. While technically the plaintiff is in the position of an assignee of an unregistered concern, it must be remembered that the whole office of an equitable estoppel is to protect one from a loss which but for the estoppel he could not escape. The whole vital principle of equitable estoppel is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position involves fraud and falsehood and the law abhors both. The doctrine of estoppel is applied when necessary to prevent the acts of a party from operating as a fraud upon one who has been deliberately led to rely upon them. (*Burgess* v. *California Mutual Bldg. & Loan Assn.*, 210 Cal. 180 [290 Pac. 1029].)

(2). It is contended by the appellant that the registration of the purported transfer by the Colorado Motor

Sales Company to itself as both seller and purchaser, wherein the Commercial Discount Company was named as legal owner, constituted constructive notice to the plaintiff bank. It is true that this registration with the Motor Vehicle Department at Sacramento occurred some six weeks prior to the sale of the coupe to Knights and the transfer of its interest in the conditional sales contract by the Colorado Motor Sales Company to the plaintiff bank. It is difficult, however, to see upon what theory the appellant here succeeded to any rights vested in the Commercial Discount Company. True, this last named company endorsed and delivered to the Seaboard Finance Company the ownership certificate. This transaction, however, was never registered with the Motor Vehicle Department and therefore, as we have seen, did not effect a transfer. We cannot hold that the registration of the certificate naming the Commercial Discount Company as legal owner, constituted constructive notice to either the plaintiff bank or the purchaser Knights. It is conceded by the appellant that a reading of sections 140 to 186 inclusive, of the California Vehicle Code, discloses no express legislative intent to establish constructive notice to the world of transfers of title. The registrations of chattel mortgages on motor vehicles do indeed constitute constructive notice by express provisions of the statute. (Vehicle Code, sec. 197.) We are, however, confronted with a certificate of ownership and its registration and not with the registration of a chattel mortgage. ■ It is to be noted that constructive notice by record or registration was unknown to the common law. Such notice is a matter of statutory origin and in the absence of statute does not exist. "In the absence of statutory provision, the record of a chattel mortgage would not constitute notice for any purpose. When the terms of the statute are complied with, the record becomes conclusive notice, often contrary to the fact." (*Bell* v. *Sage,* 60 Cal. App. 149, 153 [212 Pac. 404].) ■ We cannot read into the statutes the harsh rule of constructive notice in the absence of legislative expression.

■ (3). It is contended by the appellant that the plaintiff bank was negligent in not investigating the records of the Motor Vehicle Department and that when one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer. The

application of this doctrine will not aid the appellant. As we have seen, the title of the National Funding Corporation, appellant here, comes through the devious chain of the National Seaboard Corporation, as parent of the Seaboard Finance Company, whose name is fictitious, and which acquired title by virtue of a trust receipt from Fairbanks-Fee, Inc., a corporation, the parent of Colorado Motor Sales Company, fictitiously named and unregistered. As we have said, these several transfers, if legitimate at all, carry with them all the infirmities of the position of the Colorado Motor Sales Company, which was plainly guilty of a brazen fraud in selling the coupe as unincumbered and as its property. We know of no rule of law which required either the purchaser Knights or the plaintiff bank to investigate the records in the office of the Motor Vehicle Department.

As we have said, throughout all of the devious adventures heretofore noted, the coupe remained on the sales floor of the Colorado Motor Sales Company for exhibition, demonstration and sale. If negligence exists, it must be held to be solely confined to those who clothed the Colorado Motor Sales Company with the *indicia* of ownership and permitted that company to perpetrate a fraud upon the buying public by offering to sell and selling that which it is now contended was not the property of such company. Under such circumstances, any one holding any interest, title or right pertaining to the Graham coupe will be estopped from asserting the same as against an innocent purchaser for value or an innocent assignee of a conditional sales contract under which the innocent purchaser bought. It being conceded that both Knights and the bank were innocent, they cannot be deemed to be negligent in relying upon the *indicia* of ownership with which others neither innocently nor carefully clothed the Colorado Motor Sales Company.

"Where the true owner holds out another, or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power, which through negligence, or

mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance." (*Shirey* v. *All Night and Day Bank,* 166 Cal. 50 [134 Pac. 1001].)

" . . . where the true owner clothes another with the *indicia* of ownership of property and therefore the apparent authority to transfer title thereto, and innocent third parties are thereby led into dealing with such apparent owner, the true owner will be estopped to deny that the apparent authority is the real authority. (Code Civ. Proc., sec. 1962, subd. 3.) In such cases the equities are found to be in favor of the *bona fide* purchaser rather than in favor of the owner who has by his own conduct clothed another with the power to commit the fraud." (*Powers* v. *Pacific Diesel Engine Co.,* 206 Cal. 334 [274 Pac. 512, 73 A. L. R. 1398].) (See, also, *Moss* v. *Bowman,* 116 Cal. App. 720 [3 Pac. (2d) 377]; *San Joaquin Valley Securities Co.* v. *Prather,* 123 Cal. App. 378 [11 Pac. (2d) 45].)

It is the owner who, through overconfidence in the dealer or through negligence places the *indicia* of ownership in the hands of the dealer who is guilty of negligence and not the innocent purchaser who relies on such *indicia* in making his purchase. (*Camerer* v. *California Sav. etc. Bank,* 4 Cal. (2d) 159, 172 [48 Pac. (2d) 39, 100 A. L. R. 667].)

"The title holder, having clothed the retail dealer with all the appearances of ownership or authority to sell, could not be heard to assert title or ownership as against a purchaser for value without actual notice of the reserved title who had been led by appearances created by the true owner to believe that the dealer had authority to dispose of the title in the usual course of trade. Under such cases the rights of the purchaser did not necessarily depend on the actual title or authority of the dealer, but were derived from the act of the real owner, which precluded him from disputing as against an innocent party, the existence of the title or power which, through negligence or mistaken confidence, he had caused or allowed to be vested in the party making the sale." (*Commercial Credit Co.* v. *Barney Motor Co., et al.,* 10 Cal. (2d) 718 [76 Pac. (2d) 1181].) (See, also, *California Standard Finance Corp.* v. *Riverside Finance Co.,* 111 Cal. App. 151 [295 Pac. 555].)

" . . . where an owner deposits his property with another and gives the depository such *indicia* of ownership that a

reasonable man dealing with such agent is reasonably led to believe the agent is the owner of such property and parts with value in reliance thereon, the third person will be protected even though the true owner is guilty of no more than misplaced confidence. Such misplaced confidence must be held to be negligence within the meaning of the maxim above referred to.'' (*Phelps* v. *American Mortgage Co.*, 40 Cal. App. (2d) 361 [104 Pac. (2d) 880].)

The answer of the National Funding Corporation having raised the issue which invites the application of the doctrine of estoppel, it is unnecessary that the plaintiff bank should have pleaded estoppel. (*California Standard Finance Corp.* v. *Riverside Finance Co., supra.*) We can see no difference between the position occupied by the purchaser Knights and his financial agent, the plaintiff bank.

In addition to what we have said with reference to estoppel, we have reached the conclusion that the provisions of The Uniform Trust Receipts Law (secs. 3012, et seq. Civ. Code) are decisive of the questions presented on this appeal and require an affirmance of the judgment.

The trial court found that prior to December 22, 1936, Fairbanks-Fee, Inc., doing business as Colorado Motor Sales Company, executed a trust receipt on the Graham coupe to the Commercial Discount Company to secure a loan and that at the same time it caused the automobile to be registered with the Department of Motor Vehicles with Colorado Motor Sales Company as registered owner and Commercial Discount Company as legal owner; that thereafter Commercial Discount Company assigned and transferred the trust receipt and purported to transfer the pink slip to the predecessor in interest of National Funding Corporation, Seaboard Finance Company, which was a fictitious name, duly registered, under which both Commercial Discount Company and National Funding Corporation did business; that this trust receipt finally passed to National Funding Company. There is also in the record a copy of a trust receipt dated December 28, 1936, to the Seaboard Finance Company, entruster, from Fairbanks-Fee, Inc., trustee, covering the Graham coupe. It is therefore clear that the only interest the National Funding Corporation had in the automobile was as entruster through these transactions.

Under The Uniform Trust Receipts Law the relation of entruster and trustee may be created by the execution of a trust receipt, which was done here, or by the transfer of title to the entruster (Commercial Discount Company) which was also done here. (Civ. Code, sec. 3014.) As the registration of the legal title to the coupe in the name of the entruster was concurrent with the execution of the first trust receipt it is rather clear that this was done under the provisions of The Uniform Trust Receipt Law to complete the relations there permitted and to give the entruster security for his loan and not with the intention of vesting actual legal title in the entruster.

The contract executed to evidence the trust receipt relation gave the trustee "liberty of sale" as defined in The Uniform Trust Receipts Law. Under this law the entruster does not acquire the legal title to the property, but only a lien upon it as security for the loan. ▆▆ The legal relation created by a trust receipt in some respects resembles, but is not the same as that created by a chattel mortgage. (*Commercial Discount Co.* v. *Los Angeles,* 16 Cal. (2d) 158 [105 Pac. (2d) 115].) Title to the property remains in the trustee until default and foreclosure of the lien. (Civ. Code, sec. 3016.2.)

We find the following in section 3016.5 of the Civil Code: "(2) Where a purchaser from the trustee is not protected under subdivision one hereof, the following rules shall govern:

"(a) Sales by trustee in the ordinary course of trade.

"(i) Where the trustee, under the trust receipt transaction, has liberty of sale and sells to a buyer in the ordinary course of trade, whether before or after the expiration of the thirty day period specified in subdivision one of section 3016.4 of this chapter, and whether or not filing has taken place, such buyer takes free of the entruster's security interest in the goods so sold, and no filing shall constitute notice of the entruster's security interest to such a buyer.

"(ii) No limitation placed by the entruster on the liberty of sale granted to the trustee shall affect a buyer in the ordinary course of trade, unless the limitation is actually known to the latter."

▆▆ Here the Graham coupe was sold in the ordinary course of trade to a buyer acting in good faith and without no-

tice of the lien of the National Funding Corporation. As the purchase price was paid in full it follows that the buyer took "free of the entruster's interest in the goods so sold".

A person or corporation may transact business under an unregistered fictitious name. The disability arises only when there is an attempt to enforce its contract in an action. Because of the clear provisions of The Uniform Trust Receipts Law which we have quoted vesting title in an innocent purchaser for value under the circumstances here presented, we must conclude that the National Funding Corporation lost its lien on the automobile, had no interest in or claim to it that could be enforced and is estopped to assert any defect in the title of the innocent purchaser for value.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.