(No. 7155. June 30, 1944.)

JOE LUX, Respondent and Cross-Appellant, v. ORVAL LOCKRIDGE, Appellant and Cross-Respondent.

(150 P. (2d) 127.)

640

P. W. Mitchell and Thomas A. Madden for appellant and cross-respondent.

G. C. Pennell and Durham & Hyatt for respondent and cross-appellant.

GIVENS, J.—In the fall of 1941 plaintiff-appellant, Joe Lux, agreed with Mr. Webb of the Gray Motor Company of Craigmont, dealer, to trade a car, pickup, and three trucks for a new car, pickup, and three new trucks, plaintiff to retain possession of his motor vehicles until deliveries by the company. The transaction as to the new car and pickup was completed and is not involved herein. During November, 1941, Mr. Webb brought Mr. Lockridge, the defendant-respondent and cross-appellant, out to look at plaintiff's trucks. (For clarity and convenience we refer to the parties as plaintiff and defendant.) Plaintiff testified that Mr. Webb and the defendant returned a week later to get the Ford truck here in question. Defendant testified one of the dealer's employees drove the truck to the dealer's garage the same day. Before the truck was taken to town, better tires were taken off of plaintiff's other two trucks and put on this truck and the bed thereon taken off. Several days later defendant took the truck from the company's garage and signed an order therefor dated November 18, 1941.

The provisions of chap. 144, 1941 Sess. Laws, p. 282,[1] relative to obtaining a certificate of title were not complied with. January 1, 1942, the sale and delivery of all new trucks was forbidden by the United States government, and plaintiff, although he made two applications, was un-

---

[1]"48-402-b. Except as provided in Sections 48-402-a, 48-402-j, 48-402-k, 48-402-l and 48-402-n of this act, no person acquiring a motor vehicle from the owner thereof, whether such owner be a dealer or otherwise, shall hereafter acquire any right, title, claim or interest in or to said motor vehicle until he shall have issued to him a certificate of title to said motor vehicle, nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate of said motor vehicle for a valuable consideration."

able to obtain a release for the new truck which the dealer had received. Plaintiff requested the defendant to return the truck, claiming it had been delivered to the dealer and defendant upon the condition that if plaintiff was unable to get the new truck this truck would be returned to him. Defendant, disclaiming knowledge thereof, refused to return the truck (for which he had turned over to the dealer another used truck and his note, which the dealer offered unavailingly to return,) and plaintiff filed this suit, asking for return of the truck and $690 for the rental value thereof. Defendant filed an answer and cross-complaint and asked that judgment be entered directing plaintiff to endorse, assign, and transfer the title certificate covering said truck required by the statute, supra.

The trial court found "The plaintiff Lux did not sell the truck to the defendant Lockridge. He sold it to the Gray Motor Company. The defendant Lockridge purchased the truck from the Gray Motor Co. and not from the plaintiff Lux." Also, "Mr. Lockridge denied any knowledge of the agreement between the Gray Motor Company and Lux in reference to having the trucks back in case he did not get new ones, and the Court finds that Mr. Lockridge was an innocent purchaser of the truck and that he neither knew of nor was he a party to any agreement between the plaintiff Lux and the Gray Motor Co." Judgment was nevertheless entered ordering defendant to deliver the truck to plaintiff, and refusing plaintiff damages for the use of the truck by defendant, evidently on the theory that non-compliance with chap. 144, supra, renders the purported sale to defendant void.

The defendant appeals from that part of the judgment which directs him to surrender and deliver the truck to plaintiff, and the plaintiff has appealed from the court's refusal to award damages.

There was a sharp conflict in the evidence as to whether defendant knew plaintiff retained the right to regain possession of his truck in the event the company could not deliver a new truck. There is, however, no dispute in the record that the certificate of title remained at all times in plaintiff's possession and was never transferred by him to the company or defendant and that defendant received no certificate of title from the company or plaintiff. All were equally charged with notice of chap. 144, supra, providing that no person could "acquire any right, title, claim

or interest in or to" a motor vehicle until the vendee had issued to him the certificate of title. Without, therefore, determining whether or not a sale without the transfer of the certificate is void, though urged by both parties pro and con to do so, we are impressed with the cogency of the reasoning in *Swartz v. White*, 80 Utah 150, 13 P. (2d) 643, to the effect that a purchaser not receiving the certificate of title is not a bona fide purchaser for value and therefore as against defendant the contract existing between plaintiff and the company could be shown, defeating his rights to retain the truck.

As against plaintiff's cross-appeal the trial court was justified in holding he was not entitled to rent for the use of the truck by defendant, because he voluntarily surrendered its possession through the company to defendant to be used by defendant pending delivery of a new truck by the company to him without any expression on plaintiff's part he was to be reimbursed for such use if the deal was not consummated.

Certainly, under the offer to put defendant in status quo ante, after the government's action had frustrated the transaction, the solution arrived at by the trial court and sustained herein was eminently just and fair.

The judgment is therefore affirmed. No costs allowed.

Holden, C. J., and Dunlap, J., concur.

Budge, J., dissents.

AILSHIE, J. (Dissenting.)—It appears to me that the statute under consideration (Sec. 48-402-b) was never intended to have application to the immediate parties (vendor and vendee) to a bona fide sale of a motor vehicle. The statute is clearly an "Anti-Theft Act."

A motor vehicle is property. The right to own and possess such property carries with it the right to dispose of it. While the legislature may regulate the mode of proof of ownership, it may not deprive the thing of its character as property.

"In other words, if a thing really is property, the legislature by saying it shall not be considered such cannot in fact deprive it of the character and quality which con-

stitute it property." (*Hard v. Boise City Irr., etc., Co.*, 9 Ida. 589, 600, 76 P. 331.)

I here reiterate what was said in the last cited case as follows:

"Again, it seems to me that before the courts can be justified in denying to any person the right to voluntarily sell and dispose of any property right he may possess, they should find such prohibition clearly expressed in law. It is a fundamental principle that every citizen has the inherent right to dispose of all his acquisition (1 Blackstone's *Commentaries,* 138,) and unless that inherent right be expressly abridged by law, it should not be done by the courts."

Illinois has a statute substantially the same as ours in reference to certificate of title to motor vehicles. In the comparatively recent case of *Smith v. Rust*, 33 N. E. (2d) 723, 726, the court construes the statute and reviews a number of cases arising under the Uniform Motor Vehicle Anti-Theft Act and says:

"From an examination of the authorities, we are disposed to hold it to be the general and better considered rule, having in view the vast importance and volume of the legitimate traffic in automobiles within this state and bona fide contracts in relation thereto, that the Illinois penal statutes regulating the manner of transferring or recording titles are to be strictly construed and are not by their provisions intended to prohibit or render invalid as between the parties contracts involving the bona fide sale and delivery of motor vehicles. The penal statute, while punishing violation of any of its terms in relation to the sale, transfer, delivery and registration of motor vehicles, a business in itself entirely legitimate and neither unlawful nor against public policy, is intended, as its title and context implies, to prevent theft and certain unlawful actions and practices and not to prevent or render illegal and legitimate sale, transfer and delivery of motor vehicles."

Even if the sale here involved be held void, as indicated by Justice Givens' opinion, it nevertheless seems clear to me that the part of the decree, denying plaintiff compensation for the use of his truck during the time of its detention by defendant, is inconsistent with the other part of the decree, directing the return of the truck to plaintiff and adjudging him the owner thereof. The fact that Lux "voluntarily surrendered" possession of the truck to defendant,

"to be used by defendant pending delivery of a new truck by the company," should not be held to run indefinitely and allow the defendant to use, and possibly wear out, the truck pending the continuance of the intervening order of the government freezing sales and transfers of such property. The fact, that the owner of a truck would permit the temporary use by a prospective purchaser of his property, pending consummation of the sale, can not reasonably be construed to extend indefinitely during the period of an intervening cause, beyond the control of the parties to the contract.

I am impressed with the feeling, that, if the sale is to be voided, plaintiff (cross-appellant) should be allowed reasonable compensation for the use of his truck from the date of the freezing order until the date of the trial.

While the would-be purchaser came lawfully into possession of the property, it was never intended that he should use it indefinitely without compensating the owner for the use thereof, in the event a sale and transfer was not consummated. Moreover, the delivery of a certificate of title was no part of the consideration for the sale of the property but merely the legal requirement as to the nature of proof essential to establish a valid sale. (*Ludwig v. Steger,* 99 Cal. App. 235, 278 P. 494 (5th Syll.) ; *Swank v. Moisan,* 85 Ore. 662, 166 P. 962, 964; *Sevier v. Roberts,* (Cal.) 126 P. (2d) 380, 386.)