In re KRAMER.

TOP DOLLAR AUTO SALES, Inc., SPRING-
FIELD, ILL. v. STREEPER, Trustee.

No. 9937.

United States Court of Appeals
Seventh Circuit.

Jan. 12, 1950.

Rehearing Denied Jan. 31, 1950.

Robert Weiner, Springfield, Ill., for appellant.

John F. Gibbons, Harold R. Clark, Jerseyville, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

On October 7, 1948, I. H. Streeper was appointed receiver for Arthur F. Kramer, bankrupt, and shortly thereafter took possession of thirteen automobiles, one a Cadillac, and twelve Chevrolets, as part of the assets of the bankrupt estate. At the time of the seizure ten of the Chevrolets were located in an alfalfa field which Kramer had utilized as a used car lot; the Cadillac and two of the Chevrolets were found on the farm of Kramer's father which was located across the highway from the aforementioned alfalfa field. Thereafter Streeper was elected and qualified as trustee of the bankrupt estate.

Top Dollar Auto Sales, Inc., an Illinois corporation (hereinafter referred to as "Top Dollar"), was a retail and wholesale dealer in used and new motor vehicles, located in Springfield, Illinois. Since 1946 it had sold numerous motor vehicles to one Knetzer and to Knetzer Motor Sales Company of Edwardsville, Illinois. (For convenience both will be referred to as "Knetzer.") Arthur F. Kramer, in turn, for a period of several months in 1948, had numerous dealings in automobiles with Knetzer.

On November 1, 1948, Top Dollar filed a petition for reclamation of three Chevrolets, describing them as Car Nos. 785, 790, and 798, and giving as further description the motor numbers and dates of delivery

The petition alleged that the three Chevrolets had been sold to Knetzer pursuant to a conditional sales contract whereby Top Dollar retained title until payment for said automobiles was made. Henry Kramer, father of the bankrupt, likewise filed a reclamation petition covering Car No. 785.

On December 14, 1948, Streeper, as trustee, filed a petition for a turn-over order directing himself as receiver to turn over to himself as trustee the personal property in the estate of Arthur F. Kramer. By stipulation the two reclamation petitions and the petition for the turn-over order were heard by the referee at the same time on January 20, 1949. During the hearing the petition for reclamation by Henry Kramer was withdrawn. No objections were entered to the petition for the turn-over order, except as to the three Chevrolets claimed by Top Dollar. The referee decided by order dated March 14, 1949, that the title of the three Chevrolets which were in dispute was in Top Dollar, and directed the trustee to return said automobiles to Top Dollar. The trustee petitioned for review of the referee's order, and the district court on April 20, 1949, reversed the order of the referee finding the title of the three automobiles to be in I. H. Streeper in his capacity as trustee of the estate of Arthur F. Kramer, bankrupt. It is from this order of the district court that Top Dollar brings this appeal.

During the periods here in question, Arthur F. Kramer was a farmer. His start in his brief career as an automobile dealer was the purchase of a tractor from Knetzer. The postwar shortage of new automobiles still existed, and he apparently decided to engage in the automobile business along with his farming, and he used his alfalfa field to store the vehicles. He accepted full list price deposits from numerous eager prospective purchasers, and turned over to Knetzer these sums, which totaled over a four or five month period more than two million dollars. He delivered such deposits to Knetzer as late as October 3, 1948. The date of his adjudication in bankruptcy was October 6, 1948.

Top Dollar had been selling automobiles to Knetzer since 1946, receiving as high as $300 to $400 above list price. Top Dollar officers knew in 1948 that Knetzer was selling to Kramer some of the automobiles purchased. It is without dispute that the total deposits made by Kramer to Knetzer were more than sufficient to pay for the automobiles received by him, including the three here in question. In fact, Kramer testified that he had "a lot more" which he had paid for but did not receive.

In those lush days for dealers in automobiles, Top Dollar at times sold the same car more than once, presumably at a profit each time. Car No. 785 here in question was purchased by Top Dollar on August 30, 1948, and sold to Knetzer the following day; on September 8, 1948, Knetzer sold it to Josephine Thompson, who sold it to Top Dollar on September 17, who, in turn, sold it to Knetzer on September 22; and on this day Knetzer sold this car to Kramer.

On January 24, 1947, Top Dollar, as a partnership, entered into a written contract with Robert L. Knetzer, doing business as Knetzer Motor Sales Company. Among other things the contract provided, "First Parties (Top Dollar) shall as they deem fit deliver to Second Party certain automobiles from time to time which shall be specified on statements or invoices for a specific price for each automobile." The contract further provided that title to said automobiles was to remain in first parties although possession thereof was delivered to second party, and that second party could sell any of said automobiles for cash, concurrent with delivery, at a price not less than that specified in the invoice, the proceeds in excess of the invoice price going to second party, and the balance to first parties. It was also provided that first parties could repossess any and all automobiles delivered to second party if the latter failed to remit the full purchase price when same were sold.

In passing it should be noted the contract was between Top Dollar, a partnership, and Knetzer, an individual. It appears, however, that in September and Oc-

tober, 1948, the transactions pertaining to Chevrolet automobiles were between Top Dollar Auto Sales, Inc., a corporation, and Knetzer Motor Sales Company, a corporation. There was no assignment of the contract of January 24, 1947. Apparently officers of the two corporations assumed that they were operating under the provisions of the contract executed by their predecessors. While such understanding might be binding between the parties thereto, it raises added difficulties for Top Dollar when the later seeks to charge Kramer with knowledge of the relationship between Top Dollar and Knetzer.

The statutes of Illinois recognize the validity of conditional sales contracts. Smith-Hurd Rev.Stats. Ch. 121½, Sales, Sec. 20. However, Sec. 23 of the same chapter provides:

"(1) Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."

Here Knetzer had authority from Top Dollar to sell the automobiles in question. The written contract specifically gave such authority, and in any event Top Dollar, by its conduct, is precluded from denying Knetzer's authority to sell. We think that Kramer, blundering along in his new venture, acted in good faith and had neither express nor implied knowledge of any reservation of title in Top Dollar and was a bona fide purchaser for value. It is not claimed that Kramer obtained the three Chevrolets from Knetzer fraudulently or illegally. He paid for these automobiles, with his creditors' money it is true, but as between the trustee who represents the creditors and Top Dollar, the creditors should be protected.

█ We think this conclusion is consistent with Illinois law. In L. B. Motors, Inc., et al. v. Prichard, 303 Ill.App. 318, 25 N.E.2d 129, 131, the court said:

" * * * If property is delivered by a manufacturer or wholesale dealer to a retail dealer for the apparent purpose of resale a condition that title shall remain in the seller until the price is paid, is ineffectual as against a bona fide purchaser from the retailer. 24 R.C.L. 458."

In First Galesburg National Bank & Trust Co. v. Reyelts, 306 Ill.App. 499, 29 N.E.2d 119, 121, the court said:

"It (the investment company) * * * knowingly permitted the automobile which it now claims to own to remain in the showroom where any customer might see it on display and where it was being offered to the public generally for sale. By so doing, a customer, appellee in this case, in good faith, assuming that Mortenson had title, purchased the automobile and in so doing, it seems to us, should be protected against the holder of a secret lien of which he had no notice. Illinois Bond & Investment Co. v. Gardner, 249 Ill.App. 337." See also: Syroishka v. Pieniozek, 327 Ill.App. 218, 63 N.E.2d 675.

█ Top Dollar relies heavily on a statement which Kramer made while being examined before the referee, to the effect that he did not claim to own the three Chevrolets in question. Top Dollar asserts that the trustee is bound by that statement. However, an examination of Kramer's testimony shows that he testified, " * * * to own an automobile you have to have title to it. Well, I had not received those titles yet." In his frenzied course of dealing, it is doubtful if Kramer knew the exact status of any one of the automobiles he received from Knetzer. Many times the certificates of title would be delayed. However, he was certain that he had paid for more automobiles than he had received. It also appears from the record that Kramer did in fact have the certificates of title to two of the three Chevrolets. These certificates are now in the possession of the trustee.

The decision in this case in no manner turns upon the credibility of any of the witnesses who appeared before the referee. The issue is solely a question of law. We think the district court was correct in its interpretation of the Illinois law which governs. Order affirmed.