261 P.2d 822

**DISSAULT et al. v. EVANS.**

**No. 8027.**

Supreme Court of Idaho.

Oct. 7, 1953.

Rehearing Denied Oct. 26, 1953.

295

Gee & Hargraves, Pocatello, for appellants.

Louis F. Racine, Pocatello, for respondent.

GIVENS, Justice.

The Pocatello Automobile Dealers' Association, an unincorporated association of dealers in new automobiles of Pocatello, purchased on August 15, 1951, a 1951 Mercury automobile from the Motor Center, the business name of an automobile sales agency of Edward S. Barrett, at that time and at least until August 1952 a member of appellant automobile association. The automobile was purchased to be and was loaned as a driver's training car to the Pocatello High School and was so used for a time.

After being relinquished by the School, the automobile was, during the summer of 1952, turned over to Mr. Barrett by the Association for him to rehabilitate it, take off the dual controls and then sell it. There was a claimed regulation of the Association (no record thereof being in evidence) that the sale could not be concluded without the acquiescence and consent of another member of the Association. The certificate of title at the time the car was purchased by the Association stood in the name of E. S. Barrett, who was then president of the Association. The application for this title and this title are not in the record.

After the automobile was returned by the school, the certificate of title to Barrett was "signed off" by him and the attendant Finance Company, without naming or designating any purchaser or assignee.

August 12, 1952 Barrett sold the automobile to respondent Evans. The certificate of title, on the face of it at the time, was in the name of E. S. Barrett with the so-called "signing off" on the back thereof. In October, 1952, appellant Dissault became presi-

dent of the Association succeeding Barrett and about October 27 filled in his name as assignee or purchaser and secured issuance of a new title from the Department of Law Enforcement in his name. Respondent paid the full purchase price of the automobile to Barrett, financing part thereof with the Security Corporation, which thereafter held a lien on the automobile, though there is no exact record thereof before us. Respondent promptly paid the monthly installments. Respondent never received any certificate of title, implying in his testimony that the financing of the automobile and the fixing of all the papers connected with its sale, including the certificate of title, were left to a Mr. Mitchell, concededly a salesman for Mr. Barrett.

Shortly after the sale of the automobile, Mr. Barrett became acutely involved financially and failed to pay the Association for the automobile.

The Association demanded respondent surrender the automobile and, upon his refusal, remaining members thereof and the Association brought this suit in replevin, alleging that by reason of the certificate of title being in appellant Dissault, under Section 49–404, I.C., they have absolute title to the automobile, because respondent never received any title certificate.

There is no dispute in the record that respondent Evans did not know of the agreement of the Association, that the automobile could not be sold by Barrett without the consent of an additional member of the Association. There is considerable conflict in the evidence as to whether or not, by reason of conversations Barrett had with a former president of the Association and two of its secretaries, the Association— through the knowledge of these officers— had knowledge the automobile was being sold. There is no dispute in the record the automobile was voluntarily and intentionally turned over to Barrett for the purpose of having it sold; there is no contention that the price paid by respondent was inadequate.

The findings of the trial court are substantially in accord with the above synopsis of the evidence, concluding that respondent was entitled to possession of the automobile and that appellants were not the owners thereof, and Barrett, in delivering possession of the automobile to respondent, acted for and bound appellants.

Appellants rely strongly upon Lux v. Lockridge, 65 Idaho 639, 150 P.2d 127. That case is clearly distinguishable. At the time this automobile was purportedly sold by Barrett to respondent, the certificate of title stood in Barrett's name; in the Lux case the title certificates involved were at all times in the name of Lux and in his possession—never in the possession of the Motor Company which purported to sell the trucks to Lockridge. Therein the return of the purchase price paid by Lockridge was tendered to him—not so herein. The action of the Federal Government in curtailing and restricting the sales of trucks undoubt-

edly colored the opinion. Lockridge, except he denied knowing Lux was to transfer the trucks only if he could secure new ones, knew all about the deal and that the trucks had belonged to Lux. That case expressly did not decide whether the failure to pass the certificate of title as required by the statute made the sale void. The non-delivery of the certificate of title was an incident, not a controlling factor in the decision.

The certificate form, in accordance with the statute, provides that on assignment or transfer of title the certificate is to be forwarded to the Department of Law Enforcement within seven days. This was not done.

Section 49–405, Idaho Code, provides that:

"* * * The department when satisfied that the applicant is the owner of such motor vehicle and that the application is in proper form, shall thereupon issue in the name of the owner of the vehicle a certificate of title bearing a title number and the signature of the commissioner and the seal of his office, and setting forth the date issued and a description of the vehicle as determined by the department, together with a statement of the owner's title and of all liens or encumbrances upon the vehicle therein described, and whether possession is held by the owner under a lease, contract or condition-

al sale, *or other like agreement."* (Emphasis added.)

The certificate of title form on the face of it contains a space to name or designate a lien holder and the kind and amount of lien. The reverse side of the form contains spaces for the name of the new purchaser and his signature and also for designating liens.

Appellants argue:

"The act does not contemplate that prospective purchasers shall be obliged to search the County or State records to ascertain the status of the title, as for example, in the case of a land transfer. On the contrary he need only inspect the title certificate to determine who is the owner and whether or not there are any existing liens. Recognizing that the automobile is a highly mobile piece of equipment and may frequently be in the possession of someone other than the owner, the legislature has adopted a safe and practical method of transferring title. Everyone is presumed to know the law and its requirement that a title certificate is necessary; here it is not necessary to indulge in such a presumption for respondent admitted that he knew he had to have such title certificate (f. 120) but he failed to demand one or make inquiry and none was proferred to him. Since he failed to abide by a known duty placed on him by the law. he can-

300

not now escape the consequences." pp. 16, 17 of appellants' brief.

The certificate to Dissault in evidence, Ptfs. Ex. A, does not in any way show the interest of the Association. Although the Association contends it was the true owner at the time of the sale to respondent, the title then stood in Barrett's name with the so-called "signing off" by Barrett and the then Finance Company and designated no one as purchaser or assignee and Dissault testified the title was transferred to him merely as a convenience in delivering title to the automobile when it should be sold. At no time could anyone by looking at the certificate of title as it stood at the time the automobile was purchased by respondent, ascertain that the Association had any interest in the automobile. Appellants, to show the interest of the Association, must perforce then, contrary to the argument in their brief, go beyond and beneath the face of the certificate of title. Section 49–403, I. C., just as positively requires the seller of an automobile to deliver a certificate of title to the purchaser, Fredericks v. Birkett L. Williams Co., 68 Ohio App. 217, 40 N.E. 2d 162 at page 164, as does Section 49–404, I.C., that the purchaser must secure such certificate of title. If appellants may go beyond the certificate of title to show what they claim was the exact state of the title, respondent is equally entitled to go beyond the face of the certificate of title and show his interest.

We are impressed with this portion of the reasoning in the case of Al's Auto Sales v. Moskowitz, 203 Okl. 611, 224 P.2d 588, where a certificate of title statute similar to ours was relied upon by the assertedly true owner as herein, as follows:

"In this case the plaintiffs (plaintiffs & appellants herein) made it possible for the third party, Cross Motor Company, (Barrett or Motor Center here) to make the sale to Moskowitz, (respondent Evans) defendant, without fault on the part of the latter. There was nothing recorded or otherwise to bring to the attention of defendant Moskowitz (respondent Evans) the true ownership of the automobile. He had no notice, actual or constructive. The dealer was known to plaintiffs to be engaged in buying and selling automobiles, and the car in question was designed to go to the dealer's place of business. There was nothing to indicate to defendant that such dealer had not paid for the car, or that the car was not delivered to the dealer for sale in the Cross Motor Company's well-known business as a dealer. The plaintiffs took no steps to acquaint purchasers from the dealer that such dealer had no right to sell, although they knew of the dealer's selling business, and where, as in this case, the circumstances clearly indicated that the dealer had a right to sell, plaintiff is estopped from

claiming title as against a bona fide purchaser for value, from the dealer without actual or constructive notice of the conditions on which the car was delivered to the dealer." 224 P.2d at pages 591–592.

This principle was approved in Wren v. Bankers Inv. Co., Okl., 249 P.2d 712. See also, Bank of America Nat. T. & Sav. Ass'n v. National F. Corp., 45 Cal.App.2d 320, 114 P.2d 49; National Guarantee & Finance Co. v. Russell, Ohio App., 36 N.E.2d 1015 at page 1018 (6, 7); In re Kramer, 7 Cir., 179 F.2d 371 at page 373 (1, 2).

It would be supererogatory to attempt to correlate, analyze, harmonize or deduce a concerted rule from the many cases which have interpreted and applied various vehicle title certificate statutes similar to ours, which have considered the many peculiar and unusual situations arising.

The following citations suffice for exposition thereof: 60 C.J.S., Motor Vehicles, § 42, p. 177, 64 A.L.R. 674 and 688; Rankin v. Wyatt, 335 Mo. 628, 73 S.W.2d 764, 94 A.L.R. 941; Loyal's Auto Exchange v. Munch, 153 Neb. 628, 45 N.W.2d 913. We note that Ohio, by statute and decision, seems to have gone to the limit in upholding appellants' position, Kelley Motors v. Adams, 91 Ohio App. 68, 107 N.E.2d 363, but see Commercial Credit Co. v. Schreyer, 120 Ohio St. 568, 166 N.E. 808, 63 A.L.R. 674.

Appellants urge estoppel was not pleaded and, ordinarily, it has to be. The facts as disclosed by appellants made the issue inherent in the case and was thus before the trial court and is legitimately to be considered. Hillcrest Irr. Dist. v. Nampa etc. Irr. Dist., 57 Idaho 403 at page 411 (5, 6), 66 P.2d 115; Clark v. Union Pac. R. Co., 70 Idaho 70 at page 73, 211 P.2d 402. The decision here is not based strictly upon estoppel, but on the proposition that appellants, while insisting upon a strict adherence to the necessity of respondent having a title certificate, themselves never had a title certificate which complied with the law, in that it did not disclose their interest in the automobile, and they were primarily responsible for the situation resulting, because of Barrett's misconduct, in loss to either the Association or respondent; therefore, they were culpable as against respondent. Bank of America Nat. T. & Sav. Ass'n v. National F. Corp., supra. The certificate of title to Dissault was incorrect and at least defective, if not deceptive. Fogle v. General Credit, 74 App.D.C. 208, 122 F.2d 45 at page 50, 136 A.L.R. 814. It is true respondent never saw the certificate, did not immediately request it and paid no attention to the statute, but neither did the Association, as to strict compliance with the statute. If respondent had seen the certificate, it would not have disclosed the Association's interest.

Appellants argue a person cannot deal with another, thinking he is the prin-

cipal and later attempt to bind the true principal under the apparent authority doctrine, citing 2 Am.Jur. 85, § 103. While the text so states, the appended note leads to the more pertinent subsequent statement:

"A distinguishable case, in so far as the third person relies upon the indicia of authority, is furnished in the situation in which an agent has the possession of property or of a document representing the title to the same, although the third person does not know of the principal, but deals with the agent as owner or as one having the right to dispose of the property." p. 86.

" * * * In other words, when an owner of property clothes another with apparent title or power of disposition, third persons, induced to deal with him, will be protected. The fact that the possessor of such external indicia of power may abuse the confidence of his principal does not prevent a sale to a fair purchaser from divesting the principal of title." p. 96, § 114.

The latter quoted text is the controlling thought appropriate herein.

In law, equity, good conscience, and even-handed justice, the judgment should be and is *affirmed*. Costs to respondent.

PORTER, C. J., and TAYLOR, THOMAS, and KEETON, JJ., concur.